## LOAN AGREEMENT

This Loan Agreement is made by and between HYUNDAI MOTOR FINANCE COMPANY ("Lender"), a California corporation, and BAXTER IMPORTS LLC, a Minnesota limited liability company ("Borrower") as of the 22nd day of February, 2008.

### BACKGROUND

WHEREAS, Borrower has requested that Lender lend to Borrower the sum of $400,000.00, a commercial loan to be used solely in connection with acquisition of and normal business operations of that certain franchised Hyundai vehicle dealership located, owned, and operated by Baxter Imports LLC, a Minnesota limited liability company at 16604 State Highway 371, Brainerd, Minnesota 56401 (the "Dealership");

WHEREAS, contemporaneously herewith, Lender has agreed to provide floor plan financing to the Dealership pursuant to that certain Inventory Loan and Security Agreement (the "Inventory Loan Agreement") by and between Lender and Dealership dated as of even date;

WHEREAS, Lender has agreed to lend such funds to Borrower upon the terms and subject to the conditions set forth in this Loan Agreement ("Agreement").

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, Borrower and Lender do hereby agree as follows:

1. **Loan.** On the terms and subject to the conditions hereinafter set forth, Lender agrees to lend to Borrower, in a single advance to be made on the date hereof, the sum of Four Hundred Thousand Dollars ($400,000.00) (the "Loan").

2. **Interest.** The Loan shall bear interest at the floating commercial prime rate, as announced by the Federal Reserve Board from time to time ("Prime Rate"), plus 0.75%. Notwithstanding the foregoing, during the occurrence of and for so long as any Event of Default by Borrower under this Agreement and/or the Note or by the Dealership under the Inventory Loan Agreement is continuing, the interest rate on the Loan shall be increased to and amounts then outstanding shall bear interest at three percent (3%) over the Prime Rate.

3. **Promissory Note.** The Loan shall be evidenced by a promissory note in the form of Exhibit A attached hereto, duly executed by Borrower (the "Note"), dated of even date herewith, in the principal amount of $400,000.00 and made payable to the order of Lender. Principal and interest on the Note shall be due and payable in the manner and at the times set forth below with final maturity of the Note being on or before March 1, 2013. Should the principal of, or any installment of interest on, the Note become due and payable on any day other than a business day, the maturity thereof shall be extended to the next succeeding business day, and interest shall be payable with respect to such extension. All payments on the Note shall be made to Lender at its principal office in Fountain Valley, California, in federal or other immediately available funds, and payments shall be applied first to accrued interest and then to principal.

The principal balance of, and interest on, the Note shall be due and payable as follows: principal and interest shall be amortized over 60 months and shall be due and payable (i) in fifty-nine

**Exhibit B**

(59) equal monthly installments of principal and interest, commencing on April 1, 2008, and thereafter, on the 1st day of each succeeding calendar month during the term of the Note through and including February 1, 2013, and (ii) one (1) final installment, on March 1, 2013, in the amount of the entire unpaid principal balance and interest then owed on the Note as of such date.

Borrower may prepay the Loan in whole or in part at any time without penalty or notice. Prepayments shall first be applied to interest due and then to the remaining installments of principal in the order of the most remote maturity, so as to reduce the outstanding amount owed but not reduce the amount of the regular monthly payments.

4. **Conditions Precedent.** The obligation of Lender to make the Loan to Borrower is subject to the conditions precedent that, as of the date of the Loan:

(a) Lender shall have received duly executed copies of each document listed on Exhibit B attached hereto, in form and substance acceptable to Lender and its legal counsel (such documents and any modifications thereof, to be hereinafter collectively referred to as the "Loan Documents");

(b) Lender shall have received the other documents listed on Exhibit C attached hereto; and

(c) all representations and warranties made by Borrower to Lender are true and correct, as if made on such date, and no condition or event exists which constitutes an Event of Default (as hereinafter defined) or which, with the lapse of time and/or giving of notice, would constitute an Event of Default.

5. **Representations and Warranties.** In order to induce Lender to make the Loan hereunder, Borrower represents and warrants to Lender that:

(a) Borrower has full capacity and authority to enter into this Agreement, to make the borrowing hereunder, to execute and deliver the Loan Documents requiring Borrower's signature and to incur the obligations as provided for in the Loan Documents;

(b) the Loan Documents to which Borrower is a party are the legal and binding obligations of Borrower, enforceable in accordance with their respective terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights;

(c) neither the execution and delivery of this Agreement and the other Loan Documents, nor consummation of any of the transactions herein or therein contemplated, nor compliance with the terms and provisions hereof or thereof, will contravene or conflict with any provision of law, statute or regulation to which Borrower is subject or any judgment, license, order or permit applicable to Borrower or any indenture, mortgage, deed of trust or other instrument to which Borrower may be subject; no consent, approval, authorization or order of any court, governmental authority or third party is required in connection with the execution and delivery by Borrower of this Agreement or any of the other Loan Documents or to consummate the transactions contemplated herein or therein;

(d) all financial statements delivered by Borrower to Lender are true and correct, fairly present the financial condition of such persons to which they relate and have been prepared in accordance with generally accepted accounting principles, consistently applied, and no material adverse changes have occurred in the financial condition or business of Borrower or such persons since the date of the most recent financial statements delivered to Lender;

(e) no litigation, investigation, or governmental proceeding is pending, or, to the knowledge of Borrower, threatened against or affecting Borrower or the Dealership, which may result in any material adverse change in Borrower's or Dealership's business, properties or operations;

(f) there is no fact known to Borrower that Borrower has not disclosed to Lender in writing which may result in any material adverse change in Borrower or Dealership's business, properties or operations;

(g) Borrower owns all of the assets reflected in his most recent financial statements free and clear of all liens, security interests or other encumbrances, except as disclosed on said financial statements and/or as previously disclosed to Lender;

(h) all taxes required to be paid by Borrower and/or Dealership have in fact been paid;

(i) Borrower and, to the best of Borrower's knowledge, Dealership is not in violation of any law, ordinance, governmental rule or regulation to which it is subject, and is not in default under any material agreement, contract or understanding to which it is a party; and

(j) Borrower and, to the best of Borrower's knowledge, Dealership, and any properties or assets owned by Borrower and/or Dealership, are not in violation of, in any material respect, any environmental laws, nor is there existing, pending or threatened any investigation or inquiry by any governmental authority pursuant to any environmental laws, nor is there existing or pending any remedial obligations under any environmental laws.

6.   **Affirmative Covenants.** Until payment in full of the Note and all other obligations and liabilities of Borrower hereunder, Borrower agrees and covenants that unless Lender shall otherwise consent in writing:

(a) The Dealership business shall be conducted in an orderly and efficient manner consistent with good business practices and in accordance with all applicable regulations, laws and orders of any governmental authority and will act in accordance with customary industry standards in maintaining and operating its assets, properties and investments;

(b) The Dealership shall maintain complete and accurate books and records of transactions, all in reasonable detail and certified by the chief financial officer of Dealership as being true and correct, and will give Lender access during business hours to all books, records and documents of Dealership and permit Lender to make and take away copies thereof;



(c) On or before ~~March 31st~~ June 30TH of each year during which any amounts are owed hereunder, Borrower shall furnish to Lender, copies of the personal financial statement of Borrower as of the end of the most recent fiscal year, in reasonable detail, and certified by the Borrower as being true and correct, as having been prepared in accordance with generally accepted accounting principles, consistently applied;

(d) Borrower shall furnish to Lender as soon as available and in any event within thirty (30) days after the end of each monthly period of each fiscal year of Dealership, copies of the balance sheet of Dealership as of the end of such fiscal period, and statements of income and retained earnings and

changes in cash flow of Dealership for that fiscal period and for the portion of the fiscal year ending with such period, all in reasonable detail, and certified by the chief financial officer of Dealership as being true and correct, as having been prepared in reasonable detail on a consistent basis and fairly representing the financial condition of Dealership, subject to year-end adjustments;

(e) [Reserved]

(f) Borrower shall furnish to Lender, immediately upon becoming aware of the existence of any condition or event constituting an Event of Default or event which, with the lapse of time and/or giving of notice would constitute an Event of Default, written notice specifying the nature and period of existence thereof and any action which Borrower is taking or proposes to take with respect thereto;

(g) Borrower shall promptly notify Lender of (i) any material adverse change in the financial condition or business of Borrower or Dealership; (ii) any default under any material agreement, contract or other instrument to which Borrower or Dealership is a party or by which any of its properties are bound, or any acceleration of any maturity of any indebtedness owing by Borrower or Dealership, (iii) any material adverse claim against or affecting Borrower, Dealership or any of their respective properties; and (iv) any litigation, or any claim or controversy which might become the subject of litigation, against Borrower or Dealership affecting any of their respective property, if such litigation or potential litigation might, in the event of an unfavorable outcome, have a material adverse effect on Borrower's or Dealership's financial condition or business or might cause an Event of Default;

(h) Borrower shall promptly furnish to Lender, at Lender's request, such additional financial or other information concerning assets, liabilities, operations and transactions of Borrower and/or Dealership as Lender may from time to time reasonably request; and

(i) Borrower shall promptly pay all lawful claims, whether for labor, materials or otherwise, which might or could, if unpaid, become a lien or charge on any property or assets of Borrower, unless and to the extent only that the same are being contested in good faith by appropriate proceedings and reserves have been established therefor.

7. **Negative Covenants.** Until payment in full of the Note and all other obligations and liabilities of Borrower hereunder, Borrower covenants that Borrower shall not without prior written consent of Lender:

(a) create, incur or assume any indebtedness or borrow money, except for (i) the Loan, (ii) trade debt incurred in the ordinary course of Borrower's business, and (iii) debt reflected on Borrower's most recent balance sheet;

(b) endorse, guarantee, or otherwise become liable for the obligations of any person, firm or corporation except for endorsements of negotiable instruments by Borrower in the ordinary course of business;

(c) mortgage, assign, encumber, hypothecate or grant a security interest in any of Borrower's assets, except to Lender (provided, however, that the foregoing shall not apply to inchoate liens for taxes which are not delinquent or which are being contested in good faith);

(d) acquire all or substantially all of the assets of, any other company, firm or association; or make any other substantial change in its capitalization or its business; or

(e) sell any of its assets used or useful in its business, except in the ordinary course of business; or sell any of its assets to any other person, firm or corporation with the agreement that such assets shall be leased back to Borrower.

**8. Permitted Use of Loan.** The parties acknowledge and agree that the Loan is made solely for commercial purposes, and that the use thereof shall be limited to the acquisition of and normal business needs of the Dealership. Borrower agrees that any use of the proceeds of the Loan in whole or in part, for any other purpose, including use in connection with any entity, business, enterprise, related company or individual whatsoever, other than the Dealership, is strictly prohibited.

**9. Default.** An Event of Default shall exist if any one or more of the following events (individually, an "Event of Default" and collectively, "Events of Default") shall occur:

(a) Borrower shall fail to pay when due any principal of, or interest on, the Note or any other fee or payment due hereunder or under any of the Loan Documents;

(b) any portion of the Loan is used in breach of Section 8 of this Agreement;

(c) any representation or warranty made in any of the Loan Documents shall prove to be untrue or inaccurate in any respect as of the date on which such representation or warranty is made;

(d) any default shall occur in the performance of any of the covenants or agreements of Borrower contained herein or in any of the other Loan Documents;

(e) any default occurs in or any indebtedness of Dealership to Lender shall be accelerated or demanded under the terms of any instruments evidencing indebtedness of Dealership to Lender, including without limitation, Dealership's indebtedness to Lender under the Inventory Loan Agreement;

(f) termination of the Inventory Loan Agreement for any reason, including payment in full of Dealership's indebtedness to Lender by another lender;

(g) Borrower shall (i) apply for or consent to the appointment of a receiver, custodian, trustee, intervenor or liquidator of all or a substantial part of his assets, (ii) voluntarily become the subject of a bankruptcy, reorganization or insolvency proceeding or be insolvent or admit in writing that he is unable to pay his debts as they become due or generally not pay his debts as they become due, (iii) make a general assignment for the benefit of creditors, (iv) file a petition or answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy or insolvency laws, (v) file an answer admitting the material allegations of, or consent to, or default in answering, a petition filed against such party in any bankruptcy, reorganization or insolvency proceeding, (vi) become the subject of an order for relief under any bankruptcy, reorganization or insolvency proceeding, or (vii) fail to pay any money judgment against him before the expiration of 30 days after such judgment becomes final and no longer subject to appeal;

(h) an order, judgment or decree shall be entered by any court of competent jurisdiction or other competent authority approving a petition appointing a receiver, custodian, trustee, intervenor or

liquidator of Borrower or of all or substantially all of Borrower's assets, and such order, judgment or decree shall continue unstayed and in effect for a period of 30 days; or a complaint or petition shall be filed against Borrower seeking or instituting a bankruptcy, insolvency, reorganization, rehabilitation or receivership proceeding of Borrower, and such petition or complaint shall not have been dismissed within thirty (30) days;

(i) Borrower shall default in the payment of any material indebtedness of Borrower or in the performance of any of Borrower's material obligations and such default shall continue for more than any applicable grace period; or

(j) any final judgment(s) for the payment of money shall be rendered against Borrower and such judgment(s) shall not be satisfied or discharged at least ten (10) days prior to the date on which any of Borrower's assets could be lawfully sold to satisfy such judgment(s).

10. **Remedies Upon Event of Default.** If an Event of Default shall have occurred and is continuing, then Lender at its option may (i) declare the principal of, and all interest then accrued on, the Note and any other liabilities of Borrower to Lender to be forthwith due and payable, whereupon the same shall forthwith become due and payable without notice, presentment, demand, protest, notice of intention to accelerate, notice of acceleration, or other notice of any kind, all of which Borrower hereby expressly waives, anything contained herein or in the Note to the contrary notwithstanding, (ii) reduce any claim to judgment, and/or (iii) without notice of default or demand, pursue and enforce any of Lender's rights and remedies under the Loan Documents, any other agreement between Lender and Borrower or Dealership, or otherwise provided under or pursuant to any applicable law or agreement.

11. **Miscellaneous.**

(a) Waiver. No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder and under the other Loan Documents shall be in addition to all other rights provided by law. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

(b) Notices. Any notices or other communications required or permitted to be given by any of the Loan Documents must be given in writing and must be personally delivered or mailed by prepaid first-class mail, sent by overnight carrier, or sent via facsimile to the party to whom such notice or communication is directed, at the address of such party as follows:

| | |
|---|---|
| Borrower: | Baxter Imports LLC<br>16604 State Highway 371<br>Brainerd, MN 56401<br>Telephone: 952-512-8898<br>Facsimile: 952-512-8945 |
| Lender: | Hyundai Motor Finance Company<br>Attn: National Manager, Commercial Credit<br>10550 Talbert Avenue<br>Fountain Valley, CA 92708<br>Telephone: 714-965-7026<br>Facsimile: 714-965-7010 |
| With a copy to: | Assistant General Counsel, Director<br>Hyundai Motor Finance Company<br>10550 Talbert Avenue<br>Fountain Valley, CA 92708<br>Telephone: 714-965-3912<br>Facsimile: 714-965-3815 |

Any such notice or other communication shall be deemed to have been given on the day it is personally delivered or received from overnight carrier, or if mailed, on the third day after it is mailed, or if via facsimile, upon confirmation of receipt by the individual addressee. Any party may change its address for purposes of this Agreement by giving notice of such change to all other parties pursuant to this Section 11 (b).

(c) Governing Law and Jurisdiction. This Agreement and the other Loan Documents are being delivered, and are intended to be performed, in the State of California, and the substantive laws of California shall govern the validity, construction, enforcement and interpretation of this Agreement and all other Loan Documents, except to the extent: (i) otherwise specified therein; or (ii) applicable federal laws mandate a contrary application. Legal actions concerning any dispute, claim or matter arising out of or in relation to this Agreement shall be instituted in the Superior Court of the County of Orange, State of California, or any other appropriate court in such county, and Borrower covenants and agrees to submit to the personal jurisdiction of such court in the event of such action.

(d) Invalid Provisions. If any provision of this Agreement is held to be illegal, invalid or unenforceable by a court of competent jurisdiction, then such provision shall be severed from this Agreement and the remaining provisions shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.

(e) Maximum Interest Rate. Regardless of any provisions contained in this Agreement, the Note or in any of the other Loan Documents, Lender shall not be deemed to have contracted for or be entitled to receive, collect or apply as interest (whether termed interest in the Loan Documents or deemed to be interest by judicial determination or operation of law) on the Note, any amount in excess of the maximum rate of interest permitted to be charged by applicable law, and, in the event Lender ever receives, collects or applies as interest any such excess, such amount which would be excessive interest

shall be deemed to be a partial prepayment of principal and treated hereunder as such, and, if the principal balance of the Note is paid in full, any remaining excess shall forthwith be paid to Borrower.

(f) Entirety and Amendments. This Agreement and the other Loan Documents embody the entire agreement between the parties and supersede all prior agreements and understandings, if any, relating to the subject matter hereof and thereof, and may not be contradicted or supplemented by any prior, contemporaneous or subsequent oral agreement of the parties. This Agreement and the other Loan Documents may be amended only by an instrument in writing executed by the party against whom such amendment is sought to be enforced.

(g) Parties Bound. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that Borrower may not, without the prior written consent of Lender, assign any rights, powers, duties or obligations hereunder.

(h) Expenses. Borrower will promptly pay all reasonable costs, fees and expenses paid or incurred by Lender incident to the collection of the Loan made hereunder (including the fees and expenses of external legal counsel to Lender).

(i) Headings. Section headings are for convenience of reference only and shall in no way affect the interpretation of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date stated in the opening paragraph of page 1.

**BORROWER:**
**BAXTER IMPORTS LLC**

_____
Dennis E. Hecker
Chief Manager

**LENDER:**

HYUNDAI MOTOR FINANCE COMPANY

By: _____
Name: Sam Frobe
Title: National Manager, Commercial Credit

EXHIBIT A
to
LOAN AGREEMENT
Between
HYUNDAI MOTOR FINANCE COMPANY AND BAXTER IMPORTS LLC

**PROMISSORY NOTE**

Fountain Valley, California
Dated: February 22, 2008

$400,000.00

FOR VALUE RECEIVED, Baxter Imports LLC, a Minnesota limited liability company (the "Borrower"), promises to pay to the order of HYUNDAI MOTOR FINANCE COMPANY (the "Lender"), at 10550 Talbert Avenue, Fountain Valley, California 92708, or at such other place as may be designated in writing by the holder of this Note, the principal sum of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), with interest thereon, as provided in that certain Loan Agreement between the Borrower and the Lender dated as of even date (as the same may be supplemented, modified, amended, restated or replaced from time to time in the manner provided therein, the "Loan Agreement'). Capitalized terms used and not otherwise defined in this Note shall have the meanings respectively assigned to them in the Loan Agreement.

This Note is the Note referred to in the Loan Agreement. Principal and interest shall be due and payable as provided in the Loan Agreement, and all of the terms and provisions of the Loan Agreement, including (without limitation) provision for prepayment and acceleration of maturity, are incorporated herein by reference and made a part hereof.

Presentment for payment, notice of dishonor, protest, notice of protest and all similar notices are hereby expressly waived by the Borrower. This Note has been made at Brainerd, Minnesota and delivered in Fountain Valley, County of Orange and State of California, where all advances and repayments shall be made (except as otherwise provided in the Loan Agreement). This Note shall be governed by and construed in accordance with the applicable law pertaining in the State of California. This Note shall be governed by and construed in accordance with the applicable terms and provisions of the Loan Agreement. Each and every supplement, modification or amendment to this Note shall be in writing and signed by the Borrower and the Lender, each and every waiver of, or consent to or any departure from, any term or provision of this Note shall be in writing and signed by the Lender, and each and every restatement or replacement of this Note shall be in writing, shall be signed by the Borrower and shall require the written consent of the Lender.

BAXTER IMPORTS LLC

_____
Dennis E. Hecker
Chief Manager

EXHIBIT B
TO
to
LOAN AGREEMENT
Between
HYUNDAI MOTOR FINANCE COMPANY AND BAXTER IMPORTS LLC
**Loan Documents**

1. Loan Agreement between Hyundai Motor Finance Company and Baxter Imports LLC dated February 22, 2008.

2. Promissory Note dated February 22, 2008 in the amount of $400,000.00 executed by Baxter Imports LLC in favor of Hyundai Motor Finance Company.

3. Continuing Guaranty and Subordination Agreement executed by Dennis E. Hecker in favor of Hyundai Motor Finance Company.

4. Continuing Guaranty and Subordination Agreement executed by Jacob Holdings of UpNorth LLC in favor of Hyundai Motor Finance Company.

5. Inventory Loan and Security Agreement between Hyundai Motor Finance Company and Baxter Imports LLC with all amendments and addenda thereto as required by Hyundai Motor Finance Company.

EXHIBIT C
TO
to
LOAN AGREEMENT
Between
HYUNDAI MOTOR FINANCE COMPANY AND BAXTER IMPORTS LLC
**Other Documents**

1. Evidence of Satisfactory UCC search regarding Dealership on UCC Registries of the State of Minnesota.

2. Tax Lien and Judgment searches regarding Dealership reflect absence of tax liens and judgments.

3. Satisfactory Certificates of Good Standing regarding Dealership received from the Secretary of State of Minnesota.

4. Documentary proof acceptable to HMFC of the initial $500,000 capitalization of Baxter Imports LLC