## LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement (the "Agreement") is made by and between Rosedale Dodge, Inc., dba Rosedale Leasing, a Minnesota corporation (hereinafter called "Borrower") and Hyundai Motor Finance Company (hereinafter called "Lender"), as of the 7th day of February, 2008 (the "Closing Date").

WHEREAS, Borrower has requested that Lender lend to Borrower the sum of $44,989,818.74, to refinance the cost of Borrower's acquisition of motor vehicles including accessories and attachments thereto (each a "vehicle" and collectively, "vehicles") leased or to be leased by Borrower to Southwest-Tex Leasing Co., Inc., dba Advantage Rent-A-Car ("Advantage Rent-A-Car");

WHEREAS, Lender has agreed to lend such funds to Borrower upon the terms and subject to the conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, Borrower and Lender do hereby agree as follows:

1. LOAN:

a. Subject to the terms and conditions herein, Lender agrees to make a loan to the Borrower on the Closing Date in the aggregate principal amount of USD$44,989,818.74 (the "Loan") to refinance the Borrower's acquisition of the vehicles listed in the attached Schedule A (the "Financed Vehicles").

b. The Loan shall bear interest at the Index Rate minus 0.25%, payable monthly on the first day of each month beginning March 1, 2008.

The Borrower agrees that it will diligently cause the security interests of the Lender to be duly recorded on the certificates of title issued for the Financed Vehicles and deliver such certificates of title to the Lender at: Hyundai Motor Finance Company, P.O. Box 105299, Atlanta, Georgia 30348-5299 no later than 30 days from the Closing Date. Borrower agrees that with respect to any Financed Vehicles for which certificates of title have not been received by Lender by such date, it will either (i) immediately pay to Lender the unpaid principal amount of the Loan for such Financed Vehicles, or (ii) pay interest on the unpaid principal amount of the Loan for such Financed Vehicles, at the following rates: (A) after March 5, 2008 but before April 1, 2008, at the Index Rate, (B) after March 31, 2008 but before May 1, 2008, at the Index Rate plus 0.25%, and (C) after April 30, 2008, at the Index Rate plus 0.50%.

Notwithstanding the foregoing, upon the occurrence of and during the continuance of any Event of Default by Borrower under this Agreement and/or the Note, the interest rate on the Loan shall be increased to and amounts then outstanding shall bear interest at three percent (3%) over the Index Rate.

**Exhibit H**

As used herein, "Index Rate" shall equal the floating commercial loan rate of Bank of America, N.A. announced from time to time as its "prime rate" or "base rate" (herein called "prime rate"). Any change in the Bank of America, N.A. prime rate shall effect immediately a corresponding change in the Index Rate. Notwithstanding anything expressed or implied herein to the contrary, it is recognized that the Bank of America, N.A. prime rate and the Index Rate are not necessarily the rates of interest charged by Bank of America, N.A. or Lender to their respective most creditworthy customers.

c. The principal balance of the Loan shall be due and payable as follows: (A) USD$2,500,000 shall be due and payable no later than March 1, 2008; (B) an additional USD$5,000,000 shall be due and payable no later than May 1, 2008; (C) as each Financed Vehicle is sold, Borrower agrees to remit faithfully and immediately to Lender the amount of the outstanding Loan on such Financed Vehicle; provided, however, that absent an Event of Default, Borrower shall have the privilege of paying such amount to Lender no later than the earlier of (i) the fifteenth calendar day after the date of sale of the Financed Vehicle or (ii) the second business day after funding of such vehicle sale (including payment to HMFC of any shortfalls from the sale); provided further that in all instances where the Financed Vehicles are sold by auction, the Borrower agrees to cause the auction house to immediately wire proceeds of the sale directly to Lender; and (D) the unpaid principal amount of the Loan and all accrued but unpaid interest shall be due and payable on December 1, 2008 (the "Final Maturity Date"). No amount repaid or prepaid on the Loan may be borrowed again. Application of payments received by Lender pursuant to items (A) and (B) of this paragraph and any side letter shall be used to reduce the outstanding Loan on each Financed Vehicle on a pro rata basis. (For purposes of this Section 1(c), the date of sale is defined as the earliest to occur of (1) the date of delivery of the Financed Vehicle to the customer, (2) the contract date, (3) the date the certificate of title is assigned, or (4) the date the Borrower is paid for the Financed Vehicle).

Should the principal of, or any installment of interest on, the Note become due and payable on any day other than a business day, the maturity thereof shall be extended to the next succeeding business day, and interest shall be payable with respect to such extension. All payments on the Note shall be made to Lender at its principal office in Fountain Valley, California or at such other place as the Lender may direct in writing, in federal or other immediately available funds, and payments shall be applied first to accrued interest and then to principal.

d. The Loan to be made by Lender to Borrower shall be evidenced by a demand promissory note substantially in the form of <u>Exhibit A</u> (hereinafter called the "Note").

2. BORROWER'S WARRANTIES: To induce Lender to make the Loan hereunder, Borrower hereby represents, warrants and agrees that at the time the Loan is made hereunder:

a. Borrower shall have the right and the requisite power and authority to make, evidence and secure the Loan and to do the character of business conducted by it in each state in which it then conducts its business, and neither the making, evidencing or securing of the Loan, nor the conduct of Borrower's business in each state in which it then conducts its business shall be in violation of any restriction imposed by law or contained in Borrower's articles of incorporation, code of regulations, charter, by-laws, if any, or in

LSA 2

       violation of any restriction imposed by any outstanding agreement or commitment of Borrower; and

b.   There shall have been no change in the assets, liabilities or financial condition of Borrower or the Guarantors from that set forth in the most recent financial statements furnished by Borrower to Lender prior to the date of the Loan, other than changes in the ordinary course of business, none of which changes shall have been materially adverse; and

c.   Each Financed Vehicle shall have been delivered to Advantage Rent-A-Car, or to a lessee approved by Lender, pursuant to an executed vehicle lease approved by Lender, the executed original of which lease must have to be delivered to and on file with Lender and must not be in default; and

d.   Borrower shall have full and clear title to each Financed Vehicle, registered in its name, subject to the rights of Advantage Rent-A-Car, or to a lessee approved by Lender, which shall be junior and subordinate to the rights of the Lender, and a Certificate of Title showing Lender's first priority security interest in such vehicle shall have been applied for if permitted by law; and

e.   Insurance under a valid and enforceable policy or policies shall have been issued by insurers of recognized standing, protecting the interests of Lender, Borrower and Lessee. Such insurance shall have been obtained with respect to each Financed Vehicle, providing the coverages which shall be satisfactory to the Lender, for a term at least equal to the term of the Loan; and

f.   The location of Borrower's principal place of business is Minnesota; and

g.   The exact legal name of the Borrower is the name indicated in the signature block for the Borrower at the end of this Agreement; and

h.   Borrower is duly organized or formed, validly existing and, as applicable, in good standing under the laws of the jurisdiction of Minnesota; and

i.   The Loan is being incurred for commercial purposes and is not a "consumer transaction" or a "consumer-goods transaction" as described and defined in the Uniform Commercial Code as enacted in Minnesota, as amended and replaced from time to time (the "Code"). All of the Collateral, as defined below, is, has been or will be used, acquired or held for commercial purposes and does not constitute "consumer goods" (as described and defined in the Code); and

j.   Borrower shall not use any of the Collateral for, and shall not allow any lessee of any Financed Vehicle to use the leased vehicle for, any agricultural purposes.

3.   BORROWER'S COVENANTS: Borrower hereby covenants and agrees with Lender that:

a. At the time the Loan is made hereunder and at such other time or times as Lender may request, Borrower shall furnish to Lender such evidence as Lender may require with respect to the truth, accuracy and completeness of representations and warranties made by Borrower pursuant to Section 2 hereof or any Loan Document; and

b. Borrower shall keep proper records and books of account of its business operations and shall furnish to Lender within 30 days after the end of each month hereafter for so long as this Agreement shall be effective copies of Borrower's balance sheet as of the end of each month and related statements of income and surplus for such month, all in such detail as Lender reasonably may require from time to time and certified as to the truth, accuracy and completeness of the information contained therein, in such form and by such officers, employees or representatives of Borrower as Lender reasonably may require from time to time, and within 180 days after close of each of Borrower's fiscal years hereafter for so long as this Agreement shall be effective, a complete, executed copy of a report of an examination of Borrower's financial affairs made by independent certified public accountants selected by Borrower and acceptable to Lender, such report to include Borrower's balance sheets as of the end of such fiscal year and related statements of income and surplus for such fiscal year in such detail as Lender reasonably may require from time to time; and

c. Lender or its designee shall have the right to visit and inspect any of the property of Borrower, to examine the books of account of Borrower and to make copies thereof and to discuss the affairs and finances of Borrower with, and to be advised as to the same by, Borrower's officers and representatives at all reasonable times and from time to time and to verify the accuracy of such records and books of account by making inquiry of any other persons or entities Lender desires; and

d. Borrower hereby agrees to reimburse Lender for all taxes, other than Federal, state or local income taxes on Lender's income and all expenses incurred by Lender in connection with the Loan, including, without limitation, all stamp and other taxes paid in respect of the execution, delivery or holding of uniform commercial code financing statements or the note or the related security instruments, all filing or recording fees in connection with the filing or recording of the related security instruments and all expenses of Lender in connection with the collection of the Loan, including reasonable attorneys fees if placed with attorneys, other than salaried employees of Lender, for collection or, if prohibited, the amount permitted by law; and

e. Borrower shall pay to Lender on demand as an additional part of Borrower's indebtedness hereunder, any sum of money that may be paid by Lender on behalf of Borrower in fulfillment of any of Borrower's obligations under this Agreement or the other Loan Documents (as defined below); and

f. Borrower shall pay to Lender, forthwith upon demand, the unpaid principal amount of the Loan with respect to any Financed Vehicle that is removed from the service of a lessee for any reason, including, without any limitation, the sale, destruction or confiscation thereof, or, with respect to which a lessee's payments are and have been delinquent for more than 45 days, or which is the subject of litigation or other dispute

so as to impair the value of the vehicle as security for the Loan, together with accrued interest on the Loan to the date of payment; and

g. Notwithstanding any provision of this Agreement to the contrary, the Loan may be cancelled at any time by Lender at its election, without notice or demand, at which time, all sums due Lender shall immediately be due; and

h. Lender may, in its sole discretion: (i) notify all account debtors, lessees, obligors, makers and other counterparties to all of the Collateral (including leases of the vehicles) of the assignment of the Collateral, (ii) direct such account debtors, lessees, obligors, makers and other counterparties to pay all rentals, payments and other proceeds under the Collateral directly to Lender for application to all amounts due on the Loan; and (iii) instruct such account debtors, lessees, obligors, makers and other counterparties to respond to direct inquiries and requests for information from Lender with respect to any and all matters and transactions involving Borrower or its affiliates. Borrower waives all rights of confidentiality and privacy and instructs such account debtors, lessees, obligors, makers and other counterparties to provide Lender with whatever information and schedules Lender may require; and

i. Lender may file whatever financing and continuation statements, amendments and other documents, and may take whatever additional actions, Lender deems to be necessary and proper to perfect and continue perfection of Lender's security interests in the Collateral. Lender may file a carbon, photographic, facsimile, other reproduction or electronically authenticated or maintained copy of any financing statement or of this Agreement for use as a financing statement. Lender may make electronic filings of financing and other statements. All filings permitted under this paragraph, including without limitation, electronic filings, will be deemed to be complete and perfected for all purposes when made by Lender and may be made by Lender without Borrower's consent and without the necessity that Borrower (or Lender on Borrower's behalf) sign any such financing statements or other perfection documents. Without limitation of the generality of the foregoing: (i) to the extent that any of the Collateral is held by a third party (such as consignee or bailee, but not a lessee) (A) notice of the security interest created by this Agreement in such Collateral shall be given to each such third party and (B) Borrower shall, upon the request of Lender, obtain and deliver to Lender a written and signed acknowledgement from each such third party that it is holding the Collateral for the benefit of Lender; (ii) to the extent that any of the Collateral is comprised of electronic chattel paper, Borrower will ensure that (A) there is only one identifiable authoritative copy of the electronic chattel paper record, (B) the authoritative electronic chattel paper record for all electronic chattel paper which comprises a part of the Collateral will identify Lender as the first priority lienholder thereof, (C) the authoritative electronic chattel paper record for all electronic chattel paper which comprises a part of the Collateral will be transferred to and maintained by Lender or a third party custodian designated by Lender and (D) changes or conditions to the electronic chattel paper may not be made without the consent of Lender; and (iii) to the extent that any of the Collateral is comprised of types of Collateral that can be perfected by possession or by either possession of filing (including, without limitation, all leases of vehicles), all such Collateral shall be delivered to Lender. Lender is authorized to obtain all post-filing searches from all jurisdictions that Lender deems advisable to

confirm the proper priority of all filings made by Lender under this Agreement. Borrower agrees to execute any further documents, and to take any further actions, reasonably requested by Lender to evidence, perfect or protect the security interests granted herein or to effectuate the rights granted to Lender herein. Borrower shall reimburse Lender for all expenses incurred with respect to the perfection and the continuation of the perfection of Lender's security interests in the Collateral. Borrower appoints Lender its true and lawful attorney-in-fact, coupled with an interest, for it and in its name, to execute and sign on behalf of Borrower, and to take all acts on behalf of Borrower, that are required to perfect, maintain and protect Lender's security interest in the Collateral, including the execution of financing statements and other documents on behalf of Borrower. Such power of attorney may not be revoked; and

j.  Borrower hereby indemnifies and agrees to hold harmless Lender against all liability whatsoever and howsoever arising in connection with or because of any vehicle or the use, operation or ownership of any such vehicle or any damage to or loss, destruction or theft of the same; and

k.  This Agreement and any funds payable by Lender to Borrower shall not be assigned by Borrower without the express prior written consent of Lender, in each case; and

l.  Lender agrees that so long as there shall remain any indebtedness hereunder, Lender does not authorize, and Borrower will not, without the prior written consent of Lender: (i) grant any security interest in any of the Collateral other than pursuant to this Agreement, (ii) engage in any business other than the business in which Borrower is presently engaged, (iii) sell, assign or transfer any assets except in the regular course of business, or (iv) retire, pay dividends on, or otherwise make a distribution of capital except from earned surplus; and

m.  Borrower agrees to maintain in its business net working capital and subordinated net worth in at least the amounts set forth from time to time by Lender. (As used herein, the term "net working capital" shall mean the excess of Borrower's current assets other than vehicles over Borrower's current liabilities other than liabilities for money borrowed with respect to vehicles, and the term "subordinated net worth" shall mean the excess of all of Borrower's assets other than good will and patent, trademark, franchise and operating rights over all of Borrower's liabilities not subordinated to the claims of Lender); and

n.  Nothing in this Agreement shall be interpreted to prohibit Borrower from leasing vehicles in the ordinary course of business as long as: (i) the lease is on Borrower's standard form of lease; (ii) the lease, by its terms, does not prohibit its assignment to Lender; and (iii) the original executed lease is delivered to Lender as set forth elsewhere in this Agreement; and

o.  Borrower will not change and will not allow any change in (i) the location of Borrower's principal place of business, (ii) state of organization, (iii) the legal name of Borrower, (iv) the type of business entity under which the Borrower is organized or formed; (v) the state in which any of the Collateral (other than vehicles) is located; or (vi) the state in which any vehicle is titled or primarily garaged; in each case, without

the prior written consent of Lender. In addition, Lender shall not merge into, acquire, be acquired by or consolidated with any other person or entity. While Borrower has no right to take any of the actions described in this paragraph without the prior written consent of Lender, if the Borrower does so (or if any of such actions occur due to the act of any lessee of any vehicle), Borrower will immediately notify Lender of any such actions.

4. GRANT OF SECURITY INTEREST:

a. To secure the timely payment of all obligations owing by the Borrower and the performance and observance of all the obligations and liabilities of the Borrower contained in this Agreement and the other Loan Documents (collectively, the "Borrower Obligations"), the Borrower hereby conveys, warrants, assigns, transfers, pledges and grants a first and prior security interest onto the Lender in, to and under all Financed Vehicles including any and all attachments and accessories thereto, all proceeds of any sale, exchange, lease or other disposition of the Financed Vehicles and all leases related to the Financed Vehicles, all receipts and rights against third parties for damage or other claims (including without limitation, tort claims) relating to the Financed Vehicles, all insurance proceeds and condemnation awards relating to the Financed Vehicles, all warranties payable by reason of loss or damage to the Financed Vehicles, all chattel paper (including leases of the Financed Vehicles), electronic chattel paper (including leases of the Financed Vehicles), accounts, instruments, promissory notes, supporting obligations, documents, payment intangibles, contracts and general intangibles (in each case, to the fullest extent described and defined in the Code with respect to the Financed Vehicles and all proceeds of any kind and nature whatsoever (to the fullest extent defined and described in the Code), including, without limitation, all rentals and other payments under all leases of the Financed Vehicles, of any or all of the foregoing (all of which is collectively called the "Collateral"). The definitions of the types of Collateral described in this paragraph are intended to change, expand and contract as the definitions and descriptions of such types of Collateral that are set forth in the Code change, expand or contract. The Loan is being used to purchase the Financed Vehicles, thereby creating a purchase money priority security interest in the Collateral. Such purchase money priority security interest in the Collateral also secures all other loans, advances, indebtedness and other types of obligations of Borrower to or in favor of Lender, whether under the Agreement or otherwise, and whether used to purchase the Collateral, other collateral for such debt and obligations or used for purposes unrelated to the purchase of the Collateral or any such other collateral.

b. Without limitation of the general assignment of leases of the Collateral (and the proceeds thereof) set forth above, or of the inclusion of such leases and the proceeds thereof in the Collateral, for value received, the Borrower does hereby sell, assign and transfer to Lender, its successors and assigns all of its right, title and interest to all Proceeds (to the fullest extent described and defined in the Code) of any and all Leases of the Collateral described above, due and to become due from any lessee of the Collateral, to Lender, as additional collateral security for the Obligations.

5. CONDITIONS PRECEDENT:

LSA 7

The making of the Loan on the Closing Date shall be subject to the condition that the Lender shall have received all of the following documents in form and substance acceptable to the Lender:

a. A certificate of the Secretary of the Borrower certifying (i) the resolutions of the Borrower's board of directors approving the Loan Documents, (ii) the name, signature and authority of each officer who executes a Loan Document on the Borrower's behalf, (iii) the Borrower's certificate of formation or articles of incorporation, as applicable, and (iv) a copy of the Borrower's bylaws or other governing instrument.

b. A certificate of the Secretary of Baxter Imports, LLC, a Minnesota limited liability company ("Baxter") certifying (i) the resolutions of the Borrower's board of directors approving the Guaranty, (ii) the name, signature and authority of each officer who executes a Loan Document on Baxter's behalf, (iii) Baxter's certificate of formation or articles of incorporation, as applicable, and (iv) a copy of the Borrower's bylaws or other governing instrument.

c. Good standing certificates issued as of a recent date by the applicable office of the respective jurisdictions where the Borrower is organized.

d. All instruments and other documents required to perfect the Lender's first priority interest in the Collateral in all appropriate jurisdictions.

e. UCC search reports from all jurisdictions the Lender reasonably requests.

f. Guaranties in the form of Exhibit B attached hereto (the "Guaranties"), duly executed and delivered by Dennis E. Hecker and Baxter Imports, LLC (each a "Guarantor").

g. Executed copies of this Agreement, the Note, any side letter agreements between Borrower and Lender, and all other documents executed in connection with this Agreement (together with the Guaranties, collectively, the "Loan Documents").

h. Receipt by Lender of a payoff letter from DaimlerChrysler Financial Services Americas LLC ("DaimlerChrysler") satisfactory to Lender and copy of DaimlerChrysler's consent that Borrower enter into this Agreement with Lender.

6. DEFAULT:

Time is of the essence hereof and shall be of the essence of the Note evidencing the Loan. The occurrence of any of the following shall constitute an "Event of Default":

a. default shall be made in the due and punctual payment of any principal of, or interest on, the Note or any other amount payable under the Loan Documents when the same becomes due and payable;

b. if Borrower shall default in the due performance of any provision hereof or of any Loan Document;

c. any representation or warranty made by Borrower herein or under any Loan Document or in connection herewith or therewith shall be determined to Lender's satisfaction to have been false or materially incomplete at the time of the making thereof;

d. Borrower shall make or attempt to make a general assignment for the benefit of Borrower's creditors, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or against the Borrower or any Guarantor or the lessee of any vehicle;

e. Borrower or any Guarantor breaches any other agreement with Lender;

f. Lender reasonably deems any vehicle in danger of misuse or confiscation or otherwise reasonably deems the Loan or any vehicle insecure;

g. any Guaranty ceases to be in full force and effect or is declared null and void or otherwise not enforceable against its Guarantor in accordance with its terms, or any Guarantor repudiates its obligations under its Guaranty or denies that it has any further liability under its Guaranty or gives notice to such effect; or

h. any Collateral shall be foreclosed or levied against or proceeding for the same is commenced.

If an Event of Default occurs, then, in addition to the rights of Lender under any other section of the Loan Agreement, including Sections 3e and 3f above: (i) Lender shall have the right, at its election, to declare the unpaid principal balance of the Loan made hereunder and all accrued interest with respect thereto, and all other amounts for which Borrower shall have become obligated hereunder, immediately to be due and payable; (ii) Lender, its agents, or representatives, may take immediate possession of any Financed Vehicle and/or other Collateral and for this purpose may enter upon the premises where the same may be and remove same; (iii) upon demand, Borrower will assemble the vehicles and/or other Collateral and make them available to Lender at a location designated by Lender which shall be reasonably convenient to Lender and Borrower; (iv) Lender may sell the vehicle and/or other Collateral at public sale, at which Lender may purchase, or dispose of the same, or otherwise in such manner and upon such terms as shall appear to Lender to be reasonable without demand for performance and with such notice to Borrower, if any, as may be required by law, with or without having such vehicle and/or other Collateral at the place of sale or disposition; (v) Lender may retain some or all of the vehicles and other Collateral in either full or partial satisfaction of the Loan as determined by Lender, Borrower acknowledging and agreeing that (A) Borrower will remain liable to Lender for any deficiency amount remaining after crediting against the Loan the value received by Lender as a result of the vehicles and other Collateral that was so retained and (B) the mere repossession of some or all of the vehicles and other Collateral by Lender shall not constitute a retention of such vehicles and other Collateral in either full or partial satisfaction of the Loan unless Lender notifies Borrower in writing that Lender is retaining some or all of the vehicles and other Collateral in partial or full satisfaction of the Loan; and (vi) Lender may collect and enforce, against the account debtors under, obligors under, makers of or other counterparties to any Collateral, all Collateral (including vehicle leases) that is comprised of accounts, chattel paper (including electronic chattel paper), instruments, promissory notes, supporting obligations, documents, general intangibles, payment intangibles and the proceeds thereof. With respect to any sale of the vehicles and other Collateral by Lender under this paragraph: (A) Lender has no

obligation to clean-up or otherwise prepare any vehicle or other Collateral for sale; (B) Lender may, in any such sale, specifically disclaim any warranties of title or fitness or any other warranties that are legally waivable; (C) Lender may comply with any applicable state or federal law requirements in connection with the vehicles and other Collateral, and the disposition thereof, and such compliance will not be considered to adversely affect the commercial reasonableness of any sale of the vehicles and other Collateral; (D) Borrower agrees that ten (10) days prior written notice of any sale of the vehicles and other Collateral (other than perishable Collateral or other quickly diminishing (whether in value or existence) Collateral, for which shorter notice periods will be allowed), shall be deemed to be reasonable notice of such sale, whether such sale is public, private or a strict foreclosure; and (E) if Lender sells any of the vehicles and other Collateral upon credit (x) the Loan will be credited only with payments actually made by the purchaser of the vehicles and other Collateral that are received by Lender and applied to the indebtedness of the purchaser to Lender in connection with the sale of the vehicles and other Collateral and (y) in the event the purchaser fails to pay for the vehicles and other Collateral, Lender may resell the vehicles and other Collateral and no portion of the unpaid sales price to purchaser will be credited against the Loan. Borrower waives any right it may have to require Lender to pursue any third party for the Loan. The proceeds of any such sale or disposition shall be applied first to the actual and reasonable cost of such sale, next to the actual and reasonable cost of retaking and storing of the vehicle and/or other Collateral and then to the satisfaction of all interest on and the unpaid balance of the Loan. If the proceeds of such sale are not sufficient to defray such expenses and to satisfy all amounts due, by acceleration or otherwise, with respect to the Loan, Borrower shall pay, and Lender may recover the deficiency with interest at the highest lawful contract rate. Further, Borrower shall assign and deliver to Lender all of its remaining right, title and interest in and to each lease of a vehicle forthwith upon the acceleration of the time or times of payment of the Loan as hereinbefore provided, and if Borrower fails to make such assignment, Lender may do so as attorney-in-fact for Borrower, and upon the occurrence of an Event of Default hereunder, Borrower hereby constitutes and appoints Lender its attorney-in-fact to execute, in Borrower's name, motor vehicle certificates of title and registrations and to endorse Borrower's name on checks, drafts and other negotiable instruments. Each remedy provided to Lender herein shall be cumulative and shall be in addition to every other remedy given hereunder, under a Loan Document, or provided by law, under the Code or in equity.

Borrower shall reimburse Lender for all costs and expenses (including without limitation, Lender's reasonable legal costs and expenses) incurred by Lender in exercising any of Lender's rights and remedies under this Agreement or any of the other Loan Documents.

7.  GENERAL: It is hereby further agreed that:

a.  This Agreement may not be changed orally but only by an agreement in writing duly executed by Lender and Borrower; and

b.  By accepting or approving any insurance or any document or instrument, including, without limitation, any vehicle lease, note, security document, or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof and such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Lender; and

c. Acceptance by Lender of any payment after it may have become due, or the waiver by Lender of any Event of Default, shall not be deemed to alter or affect Borrower's obligations and Lender's rights with respect to any other payment or Event of Default. Borrower waives notice of Lender's acceptance hereof and waives presentment, demand, protest and notice of non-payment or protest as to the Note or as to any related security instrument and any other demands or notices required by law, and waives all setoffs and counterclaims; and

d. Any provision of this Agreement, or any provision of the Note or any provision of any related security instrument, prohibited by the law of any state, shall, as to such state, be ineffective to the extent of such prohibition without invalidating the remaining provisions thereof; and

e. All agreements, covenants, representations and warranties made by Borrower in this Agreement, and all statements contained in any financial statement, certificate or related security instruments delivered by Borrower hereunder shall be deemed to constitute agreements, covenants, representations and warranties made by Borrower and shall survive the execution and delivery of this Agreement and shall remain in full force and effect until all indebtedness and liabilities of Borrower to Lender hereunder and with respect to the Loan have been paid in full or otherwise fully discharged; and

f. All notices, requests and other communications pursuant to this Agreement shall be in writing, either by letter (delivered by hand or sent by certified mail, return receipt requested), or by facsimile, addressed to the address or number set forth on the signature pages hereof or at such other address or facsimile number as such party may specify. Any notice, request or communication hereunder shall be deemed to have been given when deposited in the mail, postage prepaid, or, in the case of facsimile, when received and such receipt is confirmed by a subsequent telephone conversation. Any party may change the person or address to which the notices are to be given hereunder, but any such notice shall be effective only when actually received by the party to whom it is addressed; and

g. This Agreement may be executed in any number of separate counterparts, each of which when so executed and delivered shall be an original, and all such counterparts shall together constitute one and the same instrument. Delivery of a counterpart hereof, or a signature page hereto, by facsimile shall be effective as delivery of a manually-signed counterpart hereof; and

h. This Agreement shall be binding on the successors and assigns of Borrower from the date hereof and upon the successors and assigns of Lender, from the date of its acceptance hereof until terminated by a written notice from either the Borrower or Lender to the other, but any such termination shall not relieve either of them from obligations incurred prior to the effective date of such notice.

LSA                                                            11

IN WITNESS WHEREOF this Agreement has been executed by the parties to it on the date stated at the beginning of this Agreement.

**ROSEDALE DODGE, INC.**, as Borrower

By: _____
Name: Dennis E. Hecker
Title: Chairman and Chief Executive Officer

Address:
500 Ford Road
Minneapolis, Minnesota 55426
Attn: Dennis E. Hecker
Facsimile: (952) 512-8942


**HYUNDAI MOTOR FINANCE COMPANY**, as Lender

By: _____
Name: Sam Frobe
Title: National Manager, Commercial Credit

Address:
10550 Talbert Avenue
Fountain Valley, California 92708
Attn: National Manager, Commercial Credit
Facsimile: (714) 965-7010