## Amended and Restated
## ALL ENCOMPASSING GUARANTY

This All-Encompassing Guaranty amends and replaces that certain All-Encompassing Guaranty dated March 16, 2001 (as supplemented by a series of Seven Joinder/Consents to Guarantors) executed by the certain of the undersigneds.

To:   DaimlerChrysler Services North America, LLC        Date: October 2, 2004

In consideration of and to induce DaimlerChrysler Services North America, LLC ("Lender") to make loans or extend credit to any one or all of the following undersigneds: (i) Lake Country Auto Center, Inc.; (ii) Walden Fleet Group, Inc. (formerly known as G.M.I. Acquisitions, Inc.); (iii) Southview Chevrolet Co.; (iv) Rosedale Dodge, Inc.; (v) Stillwater Ford, Lincoln-Mercury, Inc.; (vi) Hudson Auto Sales, Inc. (formerly known as Denny Hecker's Gilbert Motors, Inc.); (vii) Rosedale Leasing LLC; (viii) Eden Prairie Auto Properties, LLP; (ix) Jacob Holdings of St. Louis Park LLC; (x) Jacob Holdings of Burnsville LLC; (xi) Walden Properties of Forest Lake, LLP; (xii) WBDH Realty LLP; (xiii) Jacob Holdings of Buffalo LLC; (xiv) Dennis Hecker; (xv) Jacob Holdings of Stillwater LLC; (xvi) Jacob Holdings of Hudson LLC; (xvii) Jacob Holdings of Forest Lake LLC; (xviii) Jacob Holdings of South Robert Trail LLC; (xix) Jacob Holdings of Roseville LLC; (xx) Monticello Motors LLC; (xxi) Inver Grove Hyundai LLC; (xxii) Forest Lake Imports LLC; (xxiii) Jacob Holdings of Inver Grove LLC; (xxiv) Den-Star Aviation, Inc.; (xxv) Walden Fleet Sales Group, Inc.; (xxvi) Jacob Holdings of Redwood LLC; (xxvii) Autocal, LLC; (xxviii) Jacob Properties of Minnesota LLC; (xxix) Autocal South, LLC; (xxx) Jacob Holdings of Irvine LLC; (xxxi) Jacob Holdings of Long Lake Road LLC; (xxxii) Jacob Holdings of Akron Avenue LLC; (xxxiii) Sydney Holdings of Monticello LLC; (xxxiv) Rosedale Dodge LLC and (xxxv) Jacob Holdings of Monticello LLC (collectively the "Guarantors") and such loans or credit being evidenced by one or more promissory notes, loan agreements, security agreements, assignments, or other security instruments (herein generally called "paper"), each and every Guarantor, jointly and severally, unconditionally guaranties to Lender, its successors and assigns, that each Guarantor will fully, promptly and faithfully perform, pay and discharge all of the joint and several obligations of each other Guarantor owing to Lender, irrespective of any invalidity therein, the unenforceability thereof or the insufficiency, invalidity or unenforceability of any security therefor, and without Lender first having to proceed against any such Guarantor in its capacity as a borrower, Guarantor, or otherwise, or any other person, firm or corporation, or having to liquidate any paper or any security therefor, to pay on demand all sums due or to become due to Lender from any such Guarantor under any loan agreement, any promissory note, or any other instrument executed pursuant thereto (including this Guaranty), and to pay on demand all losses, costs, expenses, and reasonable attorney's fees (to the extent permitted by law) which Lender may suffer by reason of the default of a

EXHIBIT L

Guarantor either in its capacity as a borrower or Guarantor and, further agree that so long as any obligation of a Guarantor remains unpaid to furnish to Lender upon request a financial statement setting forth in reasonable detail, the assets, the liabilities and net worth of the respective entities.

1.     Guarantors, as primary obligors, jointly and severally, hereby unconditionally guarantees to Lender the full and prompt payment when due of all indebtedness of the Guarantors due and to become due the Lender and the full, prompt and faithful discharge of all present and future obligations owed to or assigned to Lender. The Lender may have immediate recourse against any Guarantor for full and immediate payment of the Indebtedness at any time after the Indebtedness, or any part thereof, has not been paid in full at its maturity (whether at fixed maturity or maturity accelerated by reason of a demand for payment from any Guarantor or a default under the terms of the instrument governing such Indebtedness or any instrument securing the same). The Lender may have immediate recourse against any Guarantor for full and immediate performance of any other obligation owed or assigned to Lender at any time that any Guarantor fails, upon demand, to perform said obligation.

2.     The term "Indebtedness" shall mean any and all indebtedness, liabilities and obligations of every kind, nature and description, owed to Lender by Guarantors, whether direct or indirect, absolute or contingent, whether now due and owing, or which may hereafter, from time to time, be or become due and owing, whether heretofore or hereafter created or arising, including all indebtedness evidenced by any promissory note(s) now or hereinafter executed and delivered by Guarantors to the Lender and any and all renewals, extensions, increases or modifications thereof, and including, without limitation, reasonable attorney fees, costs and expenses incurred by Lender in connection with the enforcement of this Guaranty and any and all obligations of the Borrower.

3.     This is a guarantee of payment, and not of collection, and Guarantors therefore agree that the Lender shall not be obligated prior to seeking recourse against or receiving payment from any Guarantors, to take any action whatsoever against any Guarantor, or, without limiting the generality of the foregoing, to do any of the following (although the Lender may do so, in whole or in part, at its sole option), the performance of which are hereby unconditionally waived by Guarantor:

(a)     Take any steps whatsoever to make demand upon or to collect from Borrower or to file any claim of any kind against any Guarantor; or

(b)     Take any steps whatsoever to accept, perfect the Lender's interest in, foreclose upon or realize on collateral security, if any, for the payment of the Indebtedness, or any other guarantee of the Indebtedness; or

(c)     In any other respect exercise any diligence whatsoever in collecting or attempting to collect the Indebtedness by any means.

2

4.    Guarantors' liability for payment of the Indebtedness shall be absolute and unconditional, and nothing whatever except actual full payment to the Lender of the Indebtedness shall operate to discharge Guarantors' liability hereunder. Accordingly, the Guarantors unconditionally and irrevocably waives each and every defense which, under principles of guarantee or suretyship law, would otherwise operate to impair or diminish the liability of Guarantor for the Indebtedness. Without limiting the generality of the foregoing waiver, Guarantors agree that none of the following acts, omissions or occurrences shall diminish or impair the liability of any Guarantor in any respect (all of which acts, omissions or occurrences may be done without notice to Guarantor of any kind):

(a)    Any extension, modification, indulgence, compromise, settlement or variation of any of the terms of the Indebtedness;

(b)    The discharge, disaffirmance or release of any obligations of the Borrower or any other person now or hereafter liable on the Indebtedness, by reason of bankruptcy or insolvency laws or otherwise;

(c)    The acceptance or release by the Lender of any collateral security or other Guaranty, or any settlement, compromise or extension with respect to any collateral security or other Guaranty or other Guarantors hereunder;

(d)    The application or allocation by the Lender of payments, collections or credits on the Indebtedness or any other obligations of any Guarantor to the Lender;

(e)    The creation of any new Indebtedness by any Guarantor;

(f)    The making of a demand, or absence of demand, for payment of the Indebtedness, or giving, or failing to give, any notice of dishonor or protest or any other notice;

(g)    The death of any Guarantor as to the obligations of such Guarantor's estate under this Guaranty or of any other Guarantor hereunder;

(h)    The validity, legality or enforceability of the Indebtedness or this Guaranty;

(i)    Any law, regulation or decree now or hereafter in effect that might in any manner affect any of the terms or provisions of the Indebtedness or any of the rights of Lender under the Indebtedness or this Guaranty as against any Guarantor or as against any other party to any part of the Indebtedness;

(j)    The merger or consolidation of any Guarantor into or with any corporation or any sale or transfer by any Guarantor of all or any part of its property;

(k)    Any other circumstance whatsoever that might in any manner vary the risk of any Guarantor hereunder or otherwise constitute a legal or equitable discharge of a surety or guarantor.

3

5.    Guarantor(s) unconditionally waive:

(a)    Any subrogation to the rights of the Lender against any Guarantor, until the Indebtedness has been paid in full;

(b)    Any acceptance of this Guaranty;

(c)    Any set-offs or counterclaims against the Lender which would otherwise impair the Lender's rights against any Guarantor; and

(d)    Any notice of the disposition of any collateral security and any right to object to the commercial reasonableness of the disposition of any such collateral security.

6.    This Guaranty shall inure to the benefit of the Lender and its successors and assigns, including each and every holder or owner of any of the Indebtedness guaranteed hereby. In the event that there shall be more than one such holder or owner, this Guaranty shall be deemed a separate contract with each holder and owner. In the event that any person other than the Lender shall become a holder or owner of any of the Indebtedness, each reference to the Lender hereunder shall be construed as if it referred to each such holder or owner.

7.    Guarantors agree that recourse may be had against each of its or his/her earnings and separate property for all of Guarantors' obligations under this Guaranty.

8.    Guarantors warrant and represent to the Lender that any and all financial statements concerning their personal financial condition delivered to the Lender are true and correct in all material respects as of the date of such statements, and if such statements are not current, that there has been no material adverse change in the financial situation of Guarantors from the date of such statement to the date of delivery of this Guaranty to the Lender. Guarantors acknowledge that in accepting this Guaranty, the Lender has relied upon any such financial statements, and Guarantors agree to provide the Lender a statement of their current financial condition in a form satisfactory to the Lender at least annually upon the Lender's request.

9.    The liability of each Guarantor executing this Guaranty shall be joint and several and the term "Guarantor" shall mean each and all such Guarantors. Masculine terms, as used herein, shall also refer where applicable to the feminine gender and the neuter gender and the singular reference shall also include the plural of any word, if the context so requires.

10.    No modification, rescission, waiver, release or amendment of any provision of this Guaranty shall be made or accepted, except by a written agreement duly executed by Guarantor and Lender.

4

 

11.    This Guaranty and all rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the laws of the State in which this Guaranty is executed.

12.    THIS GUARANTY IS FREELY AND VOLUNTARILY GIVEN TO THE LENDER BY GUARANTORS, JOINTLY AND SEVERALLY, WITHOUT ANY DURESS OR COERCION, AND AFTER EACH GUARANTOR, JOINTLY AND SEVERALLY, HAS EITHER CONSULTED WITH COUNSEL OR BEEN GIVEN AN OPPORTUNITY TO DO SO, AND GUARANTOR, JOINTLY AND SEVERALLY, HAS CAREFULLY AND COMPLETELY READ ALL OF THE TERMS AND PROVISIONS OF THIS GUARANTY.

IN WITNESS WHEREOF, the undersigned Guarantors have caused this instrument to be duly executed the day and year first above written.

Attest:

"GUARANTORS"

Dennis E. Hecker

LAKE COUNTRY AUTO CENTER,
INC., a Minnesota corporation

By:
Name: Gregory J. Smith
Its    Vice President

WALDEN FLEET GROUP, INC.
(formerly G.M.I. Acquisitions, Inc.)
a Minnesota corporation

By:
Name: Gregory J. Smith
Its:    Vice President

SOUTHVIEW CHEVROLET CO.,
a Minnesota corporation

By:
Name: Gregory J. Smith
Its:    Vice President

5

ROSEDALE DODGE, INC.,
a Minnesota corporation
By: _____
Name: Gregory J. Smith
Its:    Vice President

STILLWATER FORD, LINCOLN-
MERCURY, INC., a Minnesota
corporation

By: _____
Name: Gregory J. Smith
Its:    Vice President

HUDSON AUTO SALES, INC.,
(fka DENNY HECKER'S GILBERT
MOTORS, INC.), a Wisconsin
corporation
By: _____
Name: Gregory J. Smith
Its:    Vice President

WBDH REALTY, LLP,
a Minnesota limited liability partnership
By:    Walden Investment Company,
       a Minnesota corporation,
       Its General Partner

By: _____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF BUFFALO LLC,
a Minnesota Limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

EDEN PRAIRIE AUTO PROPERTIES,
LLP, a Minnesota limited liability
partnership
By:    WBDH Realty, LLP,
       a Minnesota limited liability
       partnership,
       Its General Partner
   By:  Walden Investment Company,
        a Minnesota corporation,
        Its General Partner
By:_____
Name: Gregory J. Smith
Its:    Vice President

ROSEDALE LEASING LLC,
a Minnesota limited liability company

By:_____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF ST. LOUIS
PARK LLC, a Minnesota limited liability
company

By:_____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF BURNSVILLE
LLC, a Minnesota limited liability
company

By:_____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF STILLWATER
LLC, a Minnesota limited liability
company

By:_____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF HUDSON LLC,

a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF ROSEVILLE
LLC, a Minnesota limited liability
company

By: _____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF FOREST LAKE
LLC, a Minnesota limited liability
company

By: _____
Name: Gregory J. Smith
Its:    Vice President

WALDEN PROPERTIES OF FOREST
LAKE, LLP, a Minnesota limited liability
partnership

By:    Walden Investment Company,
       a Minnesota corporation,
       Its General Partner

By: _____
Name: Gregory J. Smith
Its:    Vice President

MONTICELLO MOTORS LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

8

JACOB HOLDINGS OF SOUTH
ROBERT TRAIL LLC, a Minnesota
limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

INVER GROVE HYUNDAI LLC, a
Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

FOREST LAKE IMPORTS LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

JACOB HOLDINGS OF INVER
GROVE LLC, a Minnesota limited
liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

DEN-STAR AVIATION, INC.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
Its:   Vice President

Walden Fleet Sales Group, Inc.
a Minnesota corporation
By: _____
Name: Gregory J. Smith
Its:   Vice President

Jacob Holdings of Redwood LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

Jacob Properties of Minnesota LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

Autocal, LLC
a California limited liability company

By: _____
Name: Dennis E. Hecker
Its:   Managing Member

Jacob Holdings of Irvine LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

Autocal South, LLC
a California limited liability company

By: _____
Name: Dennis E. Hecker
Its:   Managing Member

Jacob Holdings of Long Lake Road
LLC, a Minnesota limited liability
company

By: _____
Name: Gregory J. Smith
Its:   Vice President

10

Sydney Holdings of Monticello LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:     Vice President

Jacob Holdings of Akron Avenue LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:     Vice President

Rosedale Dodge  LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:     Vice President

Jacob  Holdings of Monticello LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:     Vice President

STATE OF MINNESOTA       )
                                  ) SS.

COUNTY OF HENNEPIN       )

The foregoing instrument was acknowledged before me this ⟨22⟩ day of October, 2004, by Dennis E. Hecker, individually and as the Managing Member of Autocal South, LLC and Autocal, LLC on behalf of said limited liability companies.

Notary Public
Hennepin County,
State of Minnesota
My Commission Expires:1-31-2005

JEAN G SCHULDT
Notary Public - Minnesota
My Commission Expires Jan 31 2005

STATE OF MINNESOTA       ) SS.

COUNTY OF HENNEPIN       )

The foregoing instrument was acknowledged before me this ⟨22⟩ day of October, 2004, by Gregory J. Smith, in his capacity as Vice President of each of the above entities on behalf each entity.

Notary Public
Hennepin County,
State of Minnesota
My Commission Expires:1-31-2005

JEAN G SCHULDT
Notary Public - Minnesota
My Commission Expires Jan 31 2005

BLOOMFIELD 14545-1 648007

### ALL ENCOMPASSING GUARANTY

To:    DAIMLERCHRYSLER SERVICES NORTH AMERICA LLC

Date: March ___/___ , 2005

In consideration of and to induce DAIMLERCHRYSLER SERVICES NORTH
AMERICA LLC ("Lender") to make loans or extend credit to any one or all of the
undersigned ("Guarantors"), such loans or credit being evidenced by one or more
promissory notes, loan agreements, security agreements, assignments, or other
security instruments (herein generally called "paper"), each and every Guarantor, jointly
and severally, unconditionally guaranties to Lender, its successors and assigns, that
each Guarantor will fully, promptly and faithfully perform, pay and discharge all of the
joint and several obligations of each other Guarantor owing to Lender, irrespective of
any invalidity therein, the unenforceability thereof or the insufficiency, invalidity or
unenforceability of any security therefor, and without Lender first having to proceed
against any such Guarantor in its capacity as a borrower, Guarantor, or otherwise, or
any other person, firm or corporation, or having to liquidate any paper or any security
therefor, to pay on demand all sums due or to become due to Lender from any such
Guarantor under any loan agreement, any promissory note, or any other instrument
executed pursuant thereto (including this Guaranty), and to pay on demand all losses,
costs, expenses, and reasonable attorney's fees (to the extent permitted by law) which
Lender may suffer by reason of the default of a Guarantor either in its capacity as a
borrower or Guarantor and, further agree that so long as any obligation of a Guarantor
remains unpaid to furnish to Lender upon request a financial statement setting forth in
reasonable detail, the assets, the liabilities and net worth of the respective entities.

1.    Guarantors, as    primary obligors, jointly and severally, hereby
unconditionally guarantees to Lender the full and prompt payment when due of all
indebtedness of the Guarantors due and to become due the Lender and the full, prompt
and faithful discharge of all present and future obligations owed to or assigned to
Lender. The Lender may have immediate recourse against any Guarantor for full and
immediate payment of the indebtedness at any time after the indebtedness, or any part
thereof, has not been paid in full at its maturity (whether at fixed maturity or maturity
accelerated by reason of a demand for payment from any Guarantor or a default under
the terms of the instrument governing such indebtedness or any instrument securing the
same). The Lender may have immediate recourse against any Guarantor for full and
immediate performance of any other obligation owed or assigned to Lender at any time
that any Guarantor fails, upon demand, to perform said obligation.

2.    The term "Indebtedness" shall mean any and all indebtedness, liabilities
and obligations of every kind, nature and description, owed to Lender by Guarantors,
whether direct or indirect, absolute or contingent, whether now due and owing, or which
may hereafter, from time to time, be or become due and owing, whether heretofore or



 

hereafter created or arising, including all indebtedness evidenced by any promissory note(s) now or hereinafter executed and delivered by Guarantors to the Lender and any and all renewals, extensions, increases or modifications thereof, and including, without limitation, reasonable attorney fees, costs and expenses incurred by Lender in connection with the enforcement of this Guaranty and any and all obligations of the Borrower.

3.     This is a guarantee of payment, and not of collection, and Guarantors therefore agree that the Lender shall not be obligated prior to seeking recourse against or receiving payment from any Guarantors, to take any action whatsoever against any Guarantor, or, without limiting the generality of the foregoing, to do any of the following (although the Lender may do so, in whole or in part, at its sole option), the performance of which are hereby unconditionally waived by Guarantor:

(a)     Take any steps whatsoever to make demand upon or to collect from Borrower or to file any claim of any kind against any Guarantor; or

(b)     Take any steps whatsoever to accept, perfect the Lender's interest in, foreclose upon or realize on collateral security, if any, for the payment of the indebtedness, or any other guarantee of the indebtedness; or

(c)     In any other respect exercise any diligence whatsoever in collecting or attempting to collect the indebtedness by any means.

4.     Guarantors' liability for payment of the indebtedness shall be absolute and unconditional, and nothing whatever except actual full payment to the Lender of the indebtedness shall operate to discharge Guarantors' liability hereunder. Accordingly, the Guarantors unconditionally and irrevocably waives each and every defense which, under principles of guarantee or suretyship law, would otherwise operate to impair or diminish the liability of Guarantor for the indebtedness. Without limiting the generality of the foregoing waiver, Guarantors agree that none of the following acts, omissions or occurrences shall diminish or impair the liability of any Guarantor in any respect (all of which acts, omissions or occurrences may be done without notice to Guarantor of any kind):

(a)     Any extension, modification, indulgence, compromise, settlement or variation of any of the terms of the indebtedness;

(b)     The discharge, disaffirmance or release of any obligations of the Borrower or any other person now or hereafter liable on the indebtedness, by reason of bankruptcy or insolvency laws or otherwise;

(c)     The acceptance or release by the Lender of any collateral security or other Guaranty, or any settlement, compromise or extension with respect to any collateral security or other Guaranty or other Guarantors hereunder;

 

(d)   The application or allocation by the Lender of payments, collections or credits on the Indebtedness or any other obligations of any Guarantor to the Lender;

(e)   The creation of any new Indebtedness by any Guarantor;

(f)   The making of a demand, or absence of demand, for payment of the Indebtedness, or giving, or failing to give, any notice of dishonor or protest or any other notice;

(g)   The death of any Guarantor as to the obligations of such Guarantor's estate under this Guaranty or of any other Guarantor hereunder;

(h)   The validity, legality or enforceability of the Indebtedness or this Guaranty;

(i)   Any law, regulation or decree now or hereafter in effect that might in any manner affect any of the terms or provisions of the Indebtedness or any of the rights of Lender under the Indebtedness or this Guaranty as against any Guarantor or as against any other party to any part of the Indebtedness;

(j)   The merger or consolidation of any Guarantor into or with any corporation or any sale or transfer by any Guarantor of all or any part of its property;

(k)   Any other circumstance whatsoever that might in any manner vary the risk of any Guarantor hereunder or otherwise constitute a legal or equitable discharge of a surety or guarantor.

5.   Guarantor(s) unconditionally waive:

(a)   Any subrogation to the rights of the Lender against any Guarantor, until the Indebtedness has been paid in full;

(b)   Any acceptance of this Guaranty;

(c)   Any set-offs or counterclaims against the Lender which would otherwise impair the Lender's rights against any Guarantor; and

(d)   Any notice of the disposition of any collateral security and any right to object to the commercial reasonableness of the disposition of any such collateral security.

6.   This Guaranty shall inure to the benefit of the Lender and its successors and assigns, including each and every holder or owner of any of the Indebtedness guaranteed hereby.   In the event that there shall be more than one such holder or owner, this Guaranty shall be deemed a separate contract with each holder and owner. In the event that any person other than the Lender shall become a holder or owner of

3

 

any of the Indebtedness, each reference to the Lender hereunder shall be construed as if it referred to each such holder or owner.

7.    Guarantors agree that recourse may be had against each of its or his/her earnings and separate property for all of Guarantors' obligations under this Guaranty.

8.    Guarantors warrant and represent to the Lender that any and all financial statements concerning their personal financial condition delivered to the Lender are true and correct in all material respects as of the date of such statements, and if such statements are not current, that there has been no material adverse change in the financial situation of Guarantors from the date of such statement to the date of delivery of this Guaranty to the Lender.   Guarantors acknowledge that in accepting this Guaranty, the Lender has relied upon any such financial statements, and Guarantors agree to provide the Lender a statement of their current financial condition in a form satisfactory to the Lender at least annually upon the Lender's request.

9.    The liability of each Guarantor executing this Guaranty shall be joint and several and the term "Guarantor" shall mean each and all such Guarantors. Masculine terms, as used herein, shall also refer where applicable to the feminine gender and the neuter gender and the singular reference shall also include the plural of any word, if the context so requires.

10.    No modification, rescission, waiver, release or amendment of any provision of this Guaranty shall be made or accepted, except by a written agreement duly executed by Guarantor and Lender.

11.    This Guaranty and all rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the laws of the State in which this Guaranty is executed.

12.    THIS GUARANTY IS FREELY AND VOLUNTARILY GIVEN TO THE LENDER BY GUARANTORS, JOINTLY AND SEVERALLY, WITHOUT ANY DURESS OR COERCION, AND AFTER EACH GUARANTOR, JOINTLY AND SEVERALLY, HAS EITHER CONSULTED WITH COUNSEL OR BEEN GIVEN AN OPPORTUNITY TO DO SO, AND GUARANTOR, JOINTLY AND SEVERALLY, HAS CAREFULLY AND COMPLETELY READ ALL OF THE TERMS AND PROVISIONS OF THIS GUARANTY.




IN WITNESS WHEREOF, the undersigned Guarantors have caused this instrument to be duly executed the day and year first above written.

"GUARANTORS"

_____
Dennis E. Hecker

LAKE COUNTRY AUTO CENTER, INC.,
a Minnesota corporation

By: _____
Print Name: Gregory J. Smith
  Its: Vice President

WALDEN FLEET GROUP, INC.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

SOUTHVIEW CHEVROLET CO.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

ROSEDALE DODGE, INC.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

STILLWATER FORD, LINCOLN-MERCURY,
INC., a Minnesota corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

HUDSON AUTO SALES, INC.,
a Wisconsin corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

DEN-STAR AVIATION, INC.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

WALDEN FLEET SALES GROUP, INC.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

MONTICELLO FORD-MERCURY, INC.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

WALDEN INVESTMENT COMPANY,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
  Its: Vice President

6

EDEN PRAIRIE AUTO PROPERTIES, LLP,
a Minnesota limited partnership

By:WBDH REALTY, LLP,
a Minnesota limited liability partnership
Its: General Partner

By: Walden Investment Company,
a Minnesota corporation
Its: General Partner

By: _____
Print Name: _Gregory J Smith__
Its: _Vice President__

WALDEN PROPERTIES OF FOREST LAKE,
LLP, a Minnesota limited partnership

By:WALDEN INVESTMENT COMPANY,
a Minnesota corporation
Its: General Partner

By: _____
Print Name: _Gregory J Smith__
Its: _Vice President__

WBDH REALTY, LLP,
a Minnesota limited partnership

By:WALDEN INVESTMENT COMPANY,
a Minnesota corporation
Its: General Partner

By: _____
Print Name: _Gregory J Smith__
Its: _Vice President__



ROSEDALE LEASING LLC,
a Minnesota limited liability company

By: _____
    Name: Gregory J. Smith
    Its: Vice President


JACOB HOLDINGS OF ST. LOUIS PARK
LLC, a Minnesota limited liability company

By: _____
    Name: Gregory J. Smith
    Its: Vice President


JACOB HOLDINGS OF BURNSVILLE LLC,
a Minnesota limited liability company

By: _____
    Name: Gregory J. Smith
    Its: Vice President


JACOB HOLDINGS OF BUFFALO LLC,
a Minnesota limited liability company

By: _____
    Name: Gregory J. Smith
    Its: Vice President


JACOB HOLDINGS OF HUDSON LLC,
a Minnesota limited liability company

By: _____
    Name: Gregory J. Smith
    Its: Vice President



INVER GROVE HYUNDAI LLC,
a Minnesota limited liability company

By: _____
    Name: Gregory J. Smith
    Its: Vice President


FOREST LAKE IMPORTS LLC,
a Minnesota limited liability company

By: _____
    Name: Gregory J. Smith
    Its: Vice President


JACOB HOLDINGS OF INVER GROVE LLC,
a Minnesota limited liability company

By: _____
    Name: Gregory J. Smith
    Its: Vice President


AUTOCAL, LLC,
a California limited liability company

By: _____
    Name: Dennis E. Hecker
    Its: Member


AUTOCAL SOUTH, LLC,
a California limited liability company

By: _____
    Name: Dennis E. Hecker
    Its: Member

10




**JACOB HOLDINGS OF AKRON AVENUE
LLC, a Minnesota limited liability company**

By: _____
    Name: Gregory J. Smith
      Its: Vice President

**JACOB HOLDINGS OF IRVINE LLC,
a Minnesota limited liability company**

By: _____
    Name: Gregory J. Smith
      Its: Vice President

**JACOB HOLDINGS OF LONG LAKE ROAD
LLC, a Minnesota limited liability company**

By: _____
    Name: Gregory J. Smith
      Its: Vice President

**JACOB HOLDINGS OF MONTICELLO LLC,
a Minnesota limited liability company**

By: _____
    Name: Gregory J. Smith
      Its: Vice President

**JACOB HOLDINGS OF REDWOOD LLC,
a Minnesota limited liability company**

By: _____
    Name: Gregory J. Smith
      Its: Vice President

JACOB PROPERTIES OF MINNESOTA LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its: Vice President

ROSEDALE DODGE LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its: Vice President

JACOB HOLDINGS OF SANDBERG ROAD
LLC, a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its: Vice President

INVER GROVE MOTORS LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its: Vice President

12

 

## ACKNOWLEDGMENTS

STATE OF MINNESOTA          )
                            ) SS.
COUNTY OF _Hennepin_        )

The foregoing instrument was acknowledged before me this __1__ day of March, 2005, by Dennis E. Hecker, individually and as the Managing Member of Autocal South, LLC and Autocal, LLC on behalf of said limited liability companies.

JEAN G SCHULDT
NOTARY PUBLIC - MINNESOTA
My Commission Expires 01/31/2010

Notary Public
_Ramsey_          County,   State   of
Minnesota
My Commission Expires: _1-31-10_

STATE OF MINNESOTA          )
                            ) SS.
COUNTY OF _Hennepin_        )

The foregoing instrument was acknowledged before me this __1__ day of March, 2005, by Gregory J. Smith, in his capacity as the Vice President of each of the above named entities on behalf of each entity.

JEAN G SCHULDT
NOTARY PUBLIC - MINNESOTA
My Commission Expires 01/31/2010

Notary Public
_Ramsey_          County,   State   of
Minnesota
My Commission Expires: _1-31-10_

H:\CONFIELD 14546-12H4 673264v4

13



## FIRST AMENDMENT AND JOINDER TO GUARANTOR LOAN DOCUMENTS AND CONSENT OF CURRENT GUARANTORS

This First Amendment and Joinder to Guarantor Loan Documents and Consent of Current Guarantors (the "Amendment") made this ___*l*___ day of March, 2005, by the following:

1.    Lake Country Auto Center, Inc.; Walden Fleet Group, Inc.; Southview Chevrolet Co.; Rosedale Dodge, Inc.; Stillwater Ford, Lincoln-Mercury, Inc.; Hudson Auto Sales, Inc.; Rosedale Leasing LLC; Eden Prairie Auto Properties, LLP; Jacob Holdings of St. Louis Park LLC; Jacob Holdings of Burnsville LLC; Walden Properties of Forest Lake, LLP, WBDH Realty, LLP; Jacob Holdings of Buffalo LLC; Dennis Hecker; Jacob Holdings of Stillwater LLC; Jacob Holdings of Hudson LLC; Jacob Holdings of Forest Lake LLC; Jacob Holdings of Roseville LLC; Monticello Motors LLC; Jacob Holdings of South Robert Trail LLC; Inver Grove Hyundai LLC; Forest Lake Imports LLC; Den-Star Aviation, Inc.; Jacob Holdings of Inver Grove LLC; Walden Fleet Sales Group, Inc.; Jacob Holdings of Redwood LLC; Jacob Properties of Minnesota LLC; Autocal, LLC; Jacob Holdings of Irvine LLC; Autocal South, LLC; Jacob Holdings of Long Lake Road LLC; Jacob Holdings of Akron Avenue LLC; Rosedale Dodge LLC and Jacob Holdings of Monticello LLC (collectively the "CURRENT GUARANTORS")

and

2.    Jacob Holdings of Sandberg Road LLC; Monticello Ford-Mercury Inc.; Inver Grove Motors LLC and Walden Investment Company (the "NEW GUARANTORS") for the benefit of DAIMLERCHRYSLER SERVICES NORTH AMERICA LLC, a Michigan limited liability company (and formerly known as CHRYSLER FINANCIAL COMPANY L.L.C.), whose address is 27777 Inkster Rd., Farmington Hills, MI 48334 (the "LENDER").

## WITNESSETH:

WHEREAS, Lake Country Auto Center, Inc.; Walden Fleet Group, Inc.; Southview Chevrolet Co.; Rosedale Dodge, Inc.; Stillwater Ford, Lincoln-Mercury, Inc.; Hudson Auto Sales, Inc.; Rosedale Leasing LLC; Eden Prairie Auto Properties, LLP; Jacob Holdings of St. Louis Park LLC; Jacob Holdings of Burnsville LLC; Walden Properties of Forest Lake, LLP, WBDH Realty, LLP; Jacob Holdings of Buffalo LLC; Dennis Hecker; Jacob Holdings of Stillwater LLC; Jacob Holdings of Hudson LLC; Jacob Holdings of Forest Lake LLC; Jacob Holdings of Roseville LLC; Monticello Motors LLC; Jacob Holdings of South Robert Trail LLC; Inver Grove Hyundai LLC; Forest Lake Imports LLC; Den-Star Aviation, Inc.; Jacob Holdings of Inver Grove LLC; Walden Fleet Sales Group, Inc.; Jacob Holdings of Redwood LLC; Jacob Properties of Minnesota LLC; Autocal, LLC; Jacob Holdings of Irvine LLC; Autocal South, LLC; Jacob Holdings of Long Lake Road LLC; ~~Jacob Holdings of Akron Avenue LLC; Rosedale Dodge LLC;~~ Jacob Holdings of Monticello LLC and Sydney Holdings of Monticello LLC (collectively the "Original Guarantors"), in order to induce Lender to make existing and future loans and



indebtedness to some or all of the Current Guarantors have executed on **October 22, 2004** the following loan documents guarantying and securing the repayment of the such indebtedness and loans as defined in the Guaranty referenced below (the **"Loans"**), and the performance by such Guarantors under such Loans:

1. Amended and Restated All-Encompassing Guaranty (the **"Guaranty"**); and

2. Amended and Restated Guarantor Security Agreement (Multiple Guarantors: Dealership and Non-Dealership Entities) executed by the above Guarantors (the **"Guarantor Security Agreement"**).

WHEREAS, the above two (2) noted loan documents which are each dated October 22, 2004 are referred to herein as the **"Guarantor Loan Documents"** and hereby incorporated by reference into this Amendment as the same as if all provisions of the each Guarantor Loan Document was fully set forth.

WHEREAS, the Lender has agreed to release Sydney Holdings of Monticello LLC from its obligations under the Guarantor Loan Documents as provided for herein.

WHEREAS, the Lender requires that as a condition for the continuation of the Loans and for the funding of a $9,760,000 (**"Additional Loan"**) from Lender on even date herewith to **Jacob Holdings of Sandberg Road LLC** that **Jacob Holdings of Sandberg Road LLC, Monticello Ford-Mercury Inc., Inver Grove Motors LLC and Walden Investment Company** (**"New Guarantors"**) join in the Guarantor Loan Documents so that (i) the New Guarantors guarantee the Additional Loan and the Loans with the Current Guarantors and (ii) that the Current Guarantors reaffirm their Guaranty of the Loans and confirm that the Additional Loan is guaranteed under the Guarantor Loan Documents by their terms.

NOW, THEREFORE, in consideration of the benefits obtained by the New Guarantors and the Current Guarantors, the New Guarantors and the Current Guarantors hereby agree as follows:

1. All of the above recitals are deemed correct and are hereby acknowledged and incorporated into the agreement of the parties hereto.

2. Sydney Holdings of Monticello LLC hereby released from its guaranty obligations and grant of security interest obligations under the Guarantor Loan Documents. As of even date herewith, Sydney Holdings of Monticello LLC shall not be considered a Current Guarantor under this Agreement.

3. The Current Guarantors hereby reaffirm and acknowledge their guaranty obligations to Lender and their security interests granted to Lender as established under the Guarantor Loan Documents (which are hereby specifically incorporated by reference into this Consent) and hereby confirm that the obligations and security



interests created under such Guarantor Loan Documents by their terms apply to the Additional Loan advanced on even date by Lender and hereby consent to such Additional Loan. As part of that such affirmation, the Current Guarantors shall execute on even date herewith a supplemental All Encompassing Guaranty which shall specifically apply to the Additional Loan funded to Jacob Holdings of Sandberg Road LLC on even date herewith.

4.    New Guarantors have received and reviewed copies of the Guarantor Loan Documents and the New Guarantors hereby agree to the terms and conditions of each Guarantor Loan Document which are hereby fully incorporated by reference.

5.    The New Guarantors hereby agree unconditionally to Lender, its successors and assigns, that the New Guarantors will fully, promptly and faithfully guaranty, perform, pay and discharge all of the "Indebtedness" (as defined in the Guaranty) of each other Guarantor owing to Lender pursuant to the terms and conditions of said Guaranty. The New Guarantors hereby join in the Guaranty as if it was an original party to said Guaranty and agrees to be subject to all terms and conditions of such Guaranty and the Guaranty is hereby amended so that all references to "Guarantors" shall be deemed to include the New Guarantors as one of the Guarantors. As part of such joinder, the New Guarantors shall execute on even date herewith the supplemental All Encompassing Guaranty which shall specifically apply to the Additional Loan funded to Jacob Holdings of Sandberg Road LLC on even date herewith.

6.    The New Guarantors as security for the prompt and complete payment and performance when due of all "Obligations" (as defined in Guarantor Security Agreement) due Lender, hereby grant to Lender a continuing security interest in all of the New Guarantors' right, title and interest in, to and under the "Collateral" (as defined and itemized under the Guarantor Security Agreement), whether now owned or hereafter acquired by the New Guarantors subject to all of the terms and conditions of said Security Agreement. **Jacob Holdings of Sandberg Road LLC, Monticello Ford-Mercury Inc., Inver Grove Motors LLC and Walden Investment Company** hereby join in the Guarantor Security Agreement as if each was an original party to said Guarantor Security Agreement and agrees to be subject to all terms and conditions of said Guarantor Security Agreement. The Guarantor Security Agreement is hereby amended so that all references to "Guarantor" shall be deemed to include the each respective New Guarantor as one of the Guarantors. As part of such joinder, **Monticello Ford-Mercury, Inc. and Inver Grove Motors LLC** shall execute on even date herewith a Guarantor Dealership Security Agreement and **Jacob Holdings of Sandberg Road LLC and Walden Investment Company** shall execute on even date herewith a Non-Dealership Guarantor Dealership Security Agreement.

7.    Nothing contained herein shall in any way impair the Guarantor Loan Documents or the security now held for the indebtedness there under or alter, waive, annul, vary or affect any provision, term, condition or covenant therein except as herein provided, nor affect any rights, powers, privileges, duties or remedies under the

IN WITNESS WHEREOF, the Current Guarantors have duly executed this **First Amendment to Guarantor Loan Documents and Consent of Guarantors** on the day and year first written above.

**"GUARANTORS"**

Attest: _____

_____
Dennis E. Hecker

LAKE COUNTRY AUTO CENTER, INC., a Minnesota corporation

By: _____
Name: Gregory J. Smith
Its   Vice President

WALDEN FLEET GROUP, INC.

By: _____
Name: Gregory J. Smith
Its:   Vice President

SOUTHVIEW CHEVROLET CO., a Minnesota corporation

By: _____
Name: Gregory J. Smith
Its:   Vice President

ROSEDALE DODGE, INC., a Minnesota corporation

By: _____
Name: Gregory J. Smith
Its:   Vice President

STILLWATER FORD, LINCOLN-
MERCURY, INC., a Minnesota
corporation

By: _____
Name: Gregory J. Smith
Its:    Vice President

HUDSON AUTO SALES, INC.,
a Wisconsin corporation

By: _____
Name: Gregory J. Smith
Its:    Vice President

WBDH REALTY, LLP,
a Minnesota limited liability partnership
By:    Walden Investment Company,
       a Minnesota corporation,
       Its General Partner

By: _____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF BUFFALO LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

EDEN PRAIRIE AUTO PROPERTIES,
LLP, a Minnesota limited liability
partnership
By:    WBDH Realty, LLP,
       a Minnesota limited liability
       partnership,
       Its General Partner
   By: Walden Investment Company,
       a Minnesota corporation,
       Its General Partner
By: _____
Name: Gregory J. Smith
Its:    Vice President

ROSEDALE LEASING LLC,
a Minnesota limited liability company

By:
Name: Gregory J. Smith
Its:   Vice President

JACOB HOLDINGS OF ST. LOUIS
PARK LLC, a Minnesota limited liability
company

By:
Name: Gregory J. Smith
Its:   Vice President

JACOB HOLDINGS OF BURNSVILLE
LLC, a Minnesota limited liability
company

By:
Name: Gregory J. Smith
Its:   Vice President

JACOB HOLDINGS OF STILLWATER
LLC, a Minnesota limited liability
company

By:
Name: Gregory J. Smith
Its:   Vice President

JACOB HOLDINGS OF HUDSON LLC,
a Minnesota limited liability company

By:
Name: Gregory J. Smith
Its:   Vice President

JACOB HOLDINGS OF ROSEVILLE
LLC, a Minnesota limited liability
company

By:
Name: Gregory J. Smith
Its:   Vice President

JACOB HOLDINGS OF FOREST LAKE
LLC, a Minnesota limited liability
company

By: _____
Name: Gregory J. Smith
Its:    Vice President

WALDEN PROPERTIES OF FOREST
LAKE, LLP, a Minnesota limited liability
partnership

By:    Walden Investment Company,
       a Minnesota corporation,
       Its General Partner

By: _____
Name: Gregory J. Smith
Its:    Vice President

MONTICELLO MOTORS LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

JACOB HOLDINGS OF SOUTH
ROBERT TRAIL LLC, a Minnesota
limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

INVER GROVE HYUNDAI LLC, a
Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

FOREST LAKE IMPORTS LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

JACOB HOLDINGS OF INVER
GROVE LLC, a Minnesota limited
liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

DEN-STAR AVIATION, INC.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
Its:   Vice President

Walden Fleet Sales Group, Inc.
a Minnesota corporation
By: _____
Name: Gregory J. Smith
Its:   Vice President

Jacob Holdings of Redwood LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

Jacob Properties of Minnesota LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:   Vice President

Autocal, LLC
a California limited liability company

By:
Name: Dennis E. Hecker
Its:    Managing Member

Jacob Holdings of Irvine LLC,
a Minnesota limited liability company

By:
Name: Gregory J. Smith
Its:    Vice President

Autocal South, LLC
a California limited liability company

By:
Name: Dennis E. Hecker
Its:    Managing Member

Jacob Holdings of  Long Lake Road
LLC, a Minnesota limited liability
company

By:
Name: Gregory J. Smith
Its:    Vice President

Jacob Holdings of Akron  Avenue  LLC,
a Minnesota limited liability company

By:
Name: Gregory J. Smith
Its:    Vice President

Rosedale Dodge  LLC,
a Minnesota limited liability company

By:
Name: Gregory J. Smith
Its:    Vice President

Jacob Holdings of Monticello LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

**Joinder Signature Page to First Amendment and Joinder to Guarantor Loan Documents for the New Guarantors.**

IN WITNESS WHEREOF, each New Guarantor has duly executed this First Amendment and Joinder to Guarantor Loan Documents and Consent of Guarantors on the day and year first written above.

Jacob Holdings of Sandberg Road LLC,
a Minnesota limited liability company

By: _____
Name: Gregory J. Smith
Its:    Vice President

Monticello Ford-Mercury Inc.,
a Minnesota corporation

By: _____
Name: Gregory J. Smith
Its:    Vice President

Inver Grove Motors LLC,
a Minnesota limited liability company

By: _____
Name: _____
Its: _____

Walden Investment Company,
a Minnesota corporation

By: _____
Name: _____
Its: _____

STATE OF MINNESOTA          )
                            ) SS.
COUNTY OF HENNEPIN          )

The foregoing instrument was acknowledged before me this __*i*__ day of March, 2005, by Dennis E. Hecker as Managing Member of Autocal, LLC, and Autocal South, LLC, each a California limited liability company on behalf of each company and as the Managing Member of Jacob Holdings of Irvine LLC, a Minnesota limited liability company on behalf of the company.



Notary Public
Hennepin County,
State of Minnesota
My Commission Expires:

STATE OF MINNESOTA          )
                            ) SS.
COUNTY OF HENNEPIN          )

The foregoing instrument was acknowledged before me this __*i*__ day of March, 2005 by Gregory J. Smith, in his capacity as Vice President of the above limited liability companies on behalf said companies.



Notary Public
Hennepin County,
State of Minnesota
My Commission Expires:

## ALL ENCOMPASSING GUARANTY

To:   DAIMLERCHRYSLER FINANCIAL SERVICES AMERICAS LLC

Date: August _16_ , 2006

In consideration of and to induce DAIMLERCHRYSLER FINANCIAL SERVICES AMERICAS LLC ("Lender") to make loans or extend credit to any one or all of the undersigned ("Guarantors"), such loans or credit being evidenced by one or more promissory notes, loan agreements, security agreements, assignments, or other security instruments (herein generally called "paper"), each and every Guarantor, jointly and severally, unconditionally guaranties to Lender, its successors and assigns, that each Guarantor will fully, promptly and faithfully perform, pay and discharge all of the joint and several obligations of each other Guarantor owing to Lender, irrespective of any invalidity therein, the unenforceability thereof or the insufficiency, invalidity or unenforceability of any security therefor, and without Lender first having to proceed against any such Guarantor in its capacity as a borrower, Guarantor, or otherwise, or any other person, firm or corporation, or having to liquidate any paper or any security therefor, to pay on demand all sums due or to become due to Lender from any such Guarantor under any loan agreement, any promissory note, or any other instrument executed pursuant thereto (including this Guaranty), and to pay on demand all losses, costs, expenses, and reasonable attorney's fees (to the extent permitted by law) which Lender may suffer by reason of the default of a Guarantor either in its capacity as a borrower or Guarantor and, further agree that so long as any obligation of a Guarantor remains unpaid to furnish to Lender upon request a financial statement setting forth in reasonable detail, the assets, the liabilities and net worth of the respective entities.

1.      Guarantors, as     primary obligors, jointly and severally, hereby unconditionally guarantees to Lender the full and prompt payment when due of all indebtedness of the Guarantors due and to become due the Lender and the full, prompt and faithful discharge of all present and future obligations owed to or assigned to Lender. The Lender may have immediate recourse against any Guarantor for full and immediate payment of the indebtedness at any time after the indebtedness, or any part thereof, has not been paid in full at its maturity (whether at fixed maturity or maturity accelerated by reason of a demand for payment from any Guarantor or a default under the terms of the instrument governing such indebtedness or any instrument securing the same). The Lender may have immediate recourse against any Guarantor for full and immediate performance of any other obligation owed or assigned to Lender at any time that any Guarantor fails, upon demand, to perform said obligation.

2.      The term "Indebtedness" shall mean any and all indebtedness, liabilities and obligations of every kind, nature and description, owed to Lender by Guarantors, whether direct or indirect, absolute or contingent, whether now due and owing, or which may hereafter, from time to time, be or become due and owing, whether heretofore or

{00016796.DOC;2}






hereafter created or arising, including all indebtedness evidenced by any promissory note(s) now or hereinafter executed and delivered by Guarantors to the Lender and any and all renewals, extensions, increases or modifications thereof, and including, without limitation, reasonable attorney fees, costs and expenses incurred by Lender in connection with the enforcement of this Guaranty and any and all obligations of the Borrower.

3.     This is a guarantee of payment, and not of collection, and Guarantors therefore agree that the Lender shall not be obligated prior to seeking recourse against or receiving payment from any Guarantors, to take any action whatsoever against any Guarantor, or, without limiting the generality of the foregoing, to do any of the following (although the Lender may do so, in whole or in part, at its sole option), the performance of which are hereby unconditionally waived by Guarantor:

(a)     Take any steps whatsoever to make demand upon or to collect from Borrower or to file any claim of any kind against any Guarantor; or

(b)     Take any steps whatsoever to accept, perfect the Lender's interest in, foreclose upon or realize on collateral security, if any, for the payment of the Indebtedness, or any other guarantee of the Indebtedness; or

(c)     In any other respect exercise any diligence whatsoever in collecting or attempting to collect the Indebtedness by any means.

4.     Guarantors' liability for payment of the Indebtedness shall be absolute and unconditional, and nothing whatever except actual full payment to the Lender of the Indebtedness shall operate to discharge Guarantors' liability hereunder. Accordingly, the Guarantors unconditionally and irrevocably waives each and every defense which, under principles of guarantee or suretyship law, would otherwise operate to impair or diminish the liability of Guarantor for the Indebtedness. Without limiting the generality of the foregoing waiver, Guarantors agree that none of the following acts, omissions or occurrences shall diminish or impair the liability of any Guarantor in any respect (all of which acts, omissions or occurrences may be done without notice to Guarantor of any kind):

(a)     Any extension, modification, indulgence, compromise, settlement or variation of any of the terms of the Indebtedness;

(b)     The discharge, disaffirmance or release of any obligations of the Borrower or any other person now or hereafter liable on the Indebtedness, by reason of bankruptcy or insolvency laws or otherwise;

(c)     The acceptance or release by the Lender of any collateral security or other Guaranty, or any settlement, compromise or extension with respect to any collateral security or other Guaranty or other Guarantors hereunder;

{00016796.DOC;2}2

 

(d)    The application or allocation by the Lender of payments, collections or credits on the indebtedness or any other obligations of any Guarantor to the Lender;

(e)    The creation of any new indebtedness by any Guarantor;

(f)    The making of a demand, or absence of demand, for payment of the indebtedness, or giving, or failing to give, any notice of dishonor or protest or any other notice;

(g)    The death of any Guarantor as to the obligations of such Guarantor's estate under this Guaranty or of any other Guarantor hereunder;

(h)    The validity, legality or enforceability of the indebtedness or this Guaranty;

(i)    Any law, regulation or decree now or hereafter in effect that might in any manner affect any of the terms or provisions of the indebtedness or any of the rights of Lender under the indebtedness or this Guaranty as against any Guarantor or as against any other party to any part of the indebtedness;

(j)    The merger or consolidation of any Guarantor into or with any corporation or any sale or transfer by any Guarantor of all or any part of its property;

(k)    Any other circumstance whatsoever that might in any manner vary the risk of any Guarantor hereunder or otherwise constitute a legal or equitable discharge of a surety or guarantor.

5.    Guarantor(s) unconditionally waive:

(a)    Any subrogation to the rights of the Lender against any Guarantor, until the indebtedness has been paid in full;

(b)    Any acceptance of this Guaranty;

(c)    Any set-offs or counterclaims against the Lender which would otherwise impair the Lender's rights against any Guarantor; and

(d)    Any notice of the disposition of any collateral security and any right to object to the commercial reasonableness of the disposition of any such collateral security.

6.    This Guaranty shall inure to the benefit of the Lender and its successors and assigns, including each and every holder or owner of any of the indebtedness guaranteed hereby. In the event that there shall be more than one such holder or owner, this Guaranty shall be deemed a separate contract with each holder and owner. In the event that any person other than the Lender shall become a holder or owner of

 

any of the indebtedness, each reference to the Lender hereunder shall be construed as if it referred to each such holder or owner.

7.    Guarantors agree that recourse may be had against each of its or his/her earnings and separate property for all of Guarantors' obligations under this Guaranty.

8.    Guarantors warrant and represent to the Lender that any and all financial statements concerning their personal financial condition delivered to the Lender are true and correct in all material respects as of the date of such statements, and if such statements are not current, that there has been no material adverse change in the financial situation of Guarantors from the date of such statement to the date of delivery of this Guaranty to the Lender.   Guarantors acknowledge that in accepting this Guaranty, the Lender has relied upon any such financial statements, and Guarantors agree to provide the Lender a statement of their current financial condition in a form satisfactory to the Lender at least annually upon the Lender's request.

9.    The liability of each Guarantor executing this Guaranty shall be joint and several and the term "Guarantor" shall mean each and all such Guarantors. Masculine terms, as used herein, shall also refer where applicable to the feminine gender and the neuter gender and the singular reference shall also include the plural of any word, if the context so requires.

10.    No modification, rescission, waiver, release or amendment of any provision of this Guaranty shall be made or accepted, except by a written agreement duly executed by Guarantor and Lender.

11.    This Guaranty and all rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the laws of the State in which this Guaranty is executed.

12.    THIS GUARANTY IS FREELY AND VOLUNTARILY GIVEN TO THE LENDER BY GUARANTORS, JOINTLY AND SEVERALLY, WITHOUT ANY DURESS OR COERCION, AND AFTER EACH GUARANTOR, JOINTLY AND SEVERALLY, HAS EITHER CONSULTED WITH COUNSEL OR BEEN GIVEN AN OPPORTUNITY TO DO SO, AND GUARANTOR, JOINTLY AND SEVERALLY, HAS CAREFULLY AND COMPLETELY READ ALL OF THE TERMS AND PROVISIONS OF THIS GUARANTY.



IN WITNESS WHEREOF, the undersigned Guarantors have caused this instrument to be duly executed the day and year first above written.

"GUARANTORS"

_____
Dennis E. Hecker

**LAKE COUNTRY AUTO CENTER, INC.,**
a Minnesota corporation

By: _____
Print Name: Erik P. Dove
Its: Vice President

**WALDEN FLEET GROUP, INC.,**
a Minnesota corporation

By: _____
Name: Erik P. Dove
Its: Vice President

**SOUTHVIEW CHEVROLET CO.,**
a Minnesota corporation

By: _____
Name: Erik P. Dove
Its: Vice President

**ROSEDALE DODGE, INC.,**
a Minnesota corporation

By: _____
Name: Erik P. Dove
Its: Vice President




**STILLWATER FORD, LINCOLN-MERCURY, INC.,** a Minnesota corporation

By: _____
Name: Erik P. Dove
Its: Vice President

**HUDSON AUTO SALES, INC.,**
a Wisconsin corporation

By: _____
Name: Erik P. Dove
Its: Vice President

**DEN-STAR AVIATION, INC.,**
a Minnesota corporation

By: _____
Name: Erik P. Dove
Its: Vice President

**WALDEN FLEET SALES GROUP, INC.,**
a Minnesota corporation

By: _____
Name: Erik P. Dove
Its: Vice President

**MONTICELLO FORD-MERCURY, INC.,**
a Minnesota corporation

By: _____
Name: Erik P. Dove
Its: Vice President

**WALDEN INVESTMENT COMPANY,**
a Minnesota corporation

By: _____
Name: Erik P. Dove
Its: Vice President

{00016794.DOC;2}6

 

**EDEN PRAIRIE AUTO PROPERTIES, LLP,**
a Minnesota limited liability partnership

By:*WBDH REALTY, LLP,*
a Minnesota limited liability partnership
   Its: General Partner

   By: Walden Investment Company,
   a Minnesota corporation
   Its: General Partner
   By:_____
   Print Name: Erik P. Dove
   Its: Vice President

**WALDEN PROPERTIES OF FOREST LAKE,**
**LLP,** a Minnesota limited liability partnership

By:WALDEN INVESTMENT COMPANY,
a Minnesota corporation
   Its: General Partner
By:_____
Print Name: Erik P. Dove
Its: Vice President


**WBDH REALTY, LLP,**
a Minnesota limited partnership


By:WALDEN INVESTMENT COMPANY,
a Minnesota corporation
   Its: General Partner
By:_____
Print Name: Erik P. Dove
Its: Vice President



**ROSEDALE LEASING LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President

**JACOB HOLDINGS OF ST. LOUIS PARK
LLC, a Minnesota limited liability company**

By: _____
Name: Erik P. Dove
Its: Vice President

**JACOB HOLDINGS OF BURNSVILLE LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President

**JACOB HOLDINGS OF HUDSON LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President

{00016796.DOC;2}8

 

**JACOB HOLDINGS OF STILLWATER LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President


**JACOB HOLDINGS OF ROSEVILLE LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President


**JACOB HOLDINGS OF FOREST LAKE LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President


**MONTICELLO MOTORS LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President


**JACOB HOLDINGS OF SOUTH ROBERT TRAIL LLC,** a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President

 

**INVER GROVE HYUNDAI LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President

**FOREST LAKE IMPORTS LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President

**JACOB HOLDINGS OF INVER GROVE LLC,**
a Minnesota limited liability company

By: _____
Name: Erik P. Dove
Its: Vice President

**AUTOCAL, LLC,**
a California limited liability company

By: _____
Name: Dennis E. Hecker
Its: Member

**AUTOCAL SOUTH, LLC,**
a California limited liability company

By: _____
Name: Dennis E. Hecker
Its: Member

**JACOB HOLDINGS OF AKRON AVENUE
LLC, a Minnesota limited liability company**

By: _____
Name: Erik P. Dove
Its: Vice President

**JACOB HOLDINGS OF IRVINE LLC,
a Minnesota limited liability company**

By: _____
Name: Erik P. Dove
Its: Vice President

**JACOB HOLDINGS OF LONG LAKE ROAD
LLC, a Minnesota limited liability company**

By: _____
Name: Erik P. Dove
Its: Vice President

**JACOB HOLDINGS OF MONTICELLO LLC,
a Minnesota limited liability company**

By: _____
Name: Erik P. Dove
Its: Vice President

**JACOB HOLDINGS OF REDWOOD LLC,
a Minnesota limited liability company**

By: _____
Name: Erik P. Dove
Its: Vice President




**JACOB PROPERTIES OF MINNESOTA LLC,**
a Minnesota limited liability company

By:
Name: Erik P. Dove
Its: Vice President


**ROSEDALE DODGE LLC,**
a Minnesota limited liability company

By:
Name: Erik P. Dove
Its: Vice President


**JACOB HOLDINGS OF SANDBERG ROAD
LLC, a Minnesota limited liability company**

By:
Name: Erik P. Dove
Its: Vice President


**INVER GROVE MOTORS LLC,**
a Minnesota limited liability company

By:
Name: Erik P. Dove
Its: Vice President


**JACOB HOLDINGS OF BLAINE LLC,**
a Minnesota limited liability company

By:
Name: Erik P. Dove
Its: Vice President




## ACKNOWLEDGMENTS

STATE OF MINNESOTA    )
                     ) SS.

COUNTY OF HENNEPIN    )

    The foregoing instrument was acknowledged before me this _6_ day of August, 2006, by Dennis E. Hecker, individually and as the Managing Member of Autocal South, LLC and Autocal, LLC on behalf of said limited liability companies.

                                         Notary Public

    JEAN G SCHULDT
    NOTARY PUBLIC - MINNESOTA
    My Commission Expires 01/31/2010
                                                   County,
                                 State of Minnesota
                                 My Commission Expires: _____

STATE OF MINNESOTA    )
                     ) SS.

COUNTY OF HENNEPIN    )

    The foregoing instrument was acknowledged before me this _16_ day of August, 2006, by Erik P. Dove, in his capacity as the Vice President of each of the above named entities on behalf of each entity.

                                         Notary Public

    JEAN G SCHULDT
    NOTARY PUBLIC - MINNESOTA
    My Commission Expires 01/31/2010
                                                   County,
                                 State of Minnesota
                                 My Commission Expires: _____

 

## SECOND AMENDMENT AND JOINDER TO GUARANTOR LOAN DOCUMENTS AND CONSENT OF CURRENT GUARANTORS

This Second Amendment and Joinder to Guarantor Loan Documents and Consent of Current Guarantors (the "Amendment") made this _16_ day of August, 2006, by the following:

1.     Lake Country Auto Center, Inc.; Walden Fleet Group, Inc.; Southview Chevrolet Co.; Rosedale Dodge, Inc.; Stillwater Ford, Lincoln-Mercury, Inc.; Hudson Auto Sales, Inc.; Rosedale Leasing LLC; Eden Prairie Auto Properties, LLP; Jacob Holdings of St. Louis Park LLC; Jacob Holdings of Burnsville LLC; Walden Properties of Forest Lake, LLP, WBDH Realty, LLP; Dennis Hecker; Jacob Holdings of Stillwater LLC; Jacob Holdings of Hudson LLC; Jacob Holdings of Forest Lake LLC; Jacob Holdings of Roseville LLC; Monticello Motors LLC; Jacob Holdings of South Robert Trail LLC; Inver Grove Hyundai LLC; Forest Lake Imports LLC; Den-Star Aviation, Inc.; Jacob Holdings of Inver Grove LLC; Walden Fleet Sales Group, Inc.; Jacob Holdings of Redwood LLC; Jacob Properties of Minnesota LLC; Autocal, LLC; Jacob Holdings of Irvine LLC; Autocal South, LLC; Jacob Holdings of Long Lake Road LLC; Jacob Holdings of Akron Avenue LLC; Rosedale Dodge LLC, Jacob Holdings of Monticello LLC, Jacob Holdings of Sandberg Road LLC; Monticello Ford-Mercury Inc.; Inver Grove Motors LLC and Walden Investment Company (collectively the "CURRENT GUARANTORS")

and

2.     Jacob Holdings of Blaine LLC (the "NEW GUARANTOR") for the benefit of DAIMLERCHRYSLER FINANCIAL SERVICES AMERICAS LLC, a Michigan limited liability company (and formerly known as DAIMLERCHRYSLER SERVICES NORTH AMERICA LLC AND CHRYSLER FINANCIAL COMPANY L.L.C.), whose address is 27777 Inkster Rd., Farmington Hills, MI 48334 (the "LENDER").

### WITNESSETH:

WHEREAS, Lake Country Auto Center, Inc.; Walden Fleet Group, Inc.; Southview Chevrolet Co.; Rosedale Dodge, Inc.; Stillwater Ford, Lincoln-Mercury, Inc.; Hudson Auto Sales, Inc.; Rosedale Leasing LLC; Eden Prairie Auto Properties, LLP; Jacob Holdings of St. Louis Park LLC; Jacob Holdings of Burnsville LLC; Walden Properties of Forest Lake, LLP, WBDH Realty, LLP; Dennis Hecker; Jacob Holdings of Stillwater LLC; Jacob Holdings of Hudson LLC; Jacob Holdings of Forest Lake LLC; Jacob Holdings of Roseville LLC; Monticello Motors LLC; Jacob Holdings of South Robert Trail LLC; Inver Grove Hyundai LLC; Forest Lake Imports LLC; Den-Star Aviation, Inc.; Jacob Holdings of Inver Grove LLC; Walden Fleet Sales Group, Inc.; Jacob Holdings of Redwood LLC; Jacob Properties of Minnesota LLC; Autocal, LLC; Jacob Holdings of Irvine LLC; Autocal South, LLC; Jacob Holdings of Long Lake Road LLC; Jacob Holdings of Akron Avenue LLC;

{00016905.DOC:2}



Rosedale Dodge LLC; Jacob Holdings of Monticello LLC, Sydney Holdings of Monticello LLC (which has since been released from the from its guaranty obligations and grant of security interest under the Guarantor Loan Documents (as defined below)), Jacob Holdings of Sandberg Road LLC that Jacob Holdings of Sandberg Road LLC, Monticello Ford-Mercury Inc., Inver Grove Motors LLC and Walden Investment Company (collectively the "Original Guarantors"), in order to induce Lender to make existing and future loans and indebtedness to some or all of the Current Guarantors have executed on **October 22, 2004** or on **March 1, 2005** the following loan documents guarantying and securing the repayment of the such indebtedness and loans as defined in the Guarantees referenced below (the "Loans"), and the performance by such Guarantors under such Loans:

1. Amended and Restated All-Encompassing Guaranty dated October 22, 2004 (the "Original Guaranty");

2. Amended and Restated Guarantor Security Agreement (Multiple Guarantors: Dealership and Non-Dealership Entities) dated October 22, 2004 (the "Original Guarantor Security Agreement");

3. All-Encompassing Guaranty dated March 1, 2005 (the "Second Guaranty" and collectively with the Original Guaranty, the "Guarantees"); and

4. Guarantor Security Agreement (Multiple Guarantors: Dealership and Non-Dealership Entities) dated March 1, 2005 (the "Second Guarantor Security Agreement")

WHEREAS, the above noted loan documents are referred to herein as the "Guarantor Loan Documents" and hereby incorporated by reference into this Amendment as the same as if all provisions of the each Guarantor Loan Document was fully set forth.

WHEREAS, the Lender requires that as a condition for the continuation of the Loans and for the funding of a $2,300,000 loan ("Second Additional Loan") from Lender on even date herewith to Jacob Holdings of Blaine LLC that Jacob Holdings of Blaine LLC, ("New Guarantor") join in the Guarantor Loan Documents so that (i) the New Guarantor guarantees the Second Additional Loan and the Loans with the Current Guarantors and (ii) that the Current Guarantors reaffirm their Guaranty of the Loans and confirm that the Second Additional Loan is guaranteed under the Guarantor Loan Documents by their terms.

NOW, THEREFORE, in consideration of the benefits obtained by the New Guarantor and the Current Guarantors, the New Guarantor and the Current Guarantors hereby agree as follows:

{00016905.DOC;2}

 

1.    All of the above recitals are deemed correct and are hereby acknowledged and incorporated into the agreement of the parties hereto.

2.    The Current Guarantors hereby reaffirm and acknowledge their guaranty obligations to Lender and their security interests granted to Lender as established under the Guarantor Loan Documents (which are hereby specifically incorporated by reference into this Consent) and hereby confirm that the obligations and security interests created under such Guarantor Loan Documents by their terms apply to the Second Additional Loan advanced on even date by Lender and hereby consent to such Second Additional Loan. As part of that such affirmation, the Current Guarantors shall execute on even date herewith a supplemental All Encompassing Guaranty which shall specifically apply to the Second Additional Loan funded to Jacob Holdings of Blaine LLC on even date herewith.

4.    New Guarantor has received and reviewed copies of the Guarantor Loan Documents and the New Guarantor hereby agrees to the terms and conditions of each Guarantor Loan Document which are hereby fully incorporated by reference.

5.    The New Guarantor hereby agrees unconditionally to Lender, its successors and assigns, that the New Guarantor will fully, promptly and faithfully guaranty, perform, pay and discharge all of the "Indebtedness" (as defined in the Guarantees) of each other Guarantor owing to Lender pursuant to the terms and conditions of said Guarantees. The New Guarantor hereby joins in the Original Guaranty as if it was an original party to said Original Guaranty and agrees to be subject to all terms and conditions of such Original Guaranty and the Original Guaranty is hereby amended so that all references to "Guarantors" shall be deemed to include the New Guarantor as one of the Guarantors. As part of such joinder, the New Guarantor shall execute on even date herewith the supplemental All Encompassing Guaranty which shall specifically apply to the Second Additional Loan funded to Jacob Holdings of Blaine LLC on even date herewith.

6.    Nothing contained herein shall in any way impair the Guarantor Loan Documents or the security now held for the indebtedness there under or alter, waive, annul, vary or affect any provision, term, condition or covenant therein except as herein provided, nor affect any rights, powers, privileges, duties or remedies under the Guarantor Loan Documents or any loan documents executed by the Current Guarantors, it being the intent of the Current Guarantor and Lender that the terms and provisions thereof shall continue in full force and effect as previously contained and affirmed hereby.

{00016905 DOC;2}

IN WITNESS WHEREOF, the Current Guarantors have duly executed this **Second Amendment to Guarantor Loan Documents and Consent of Guarantors** on the day and year first written above.

"GUARANTORS"

_____
Dennis E. Hecker

LAKE COUNTRY AUTO CENTER,
INC., a Minnesota corporation

By: _____
Name: Erik P. Dove
Its     Vice President

WALDEN FLEET GROUP, INC.

By: _____
Name: Erik P. Dove
Its:    Vice President

SOUTHVIEW CHEVROLET CO.,
a Minnesota corporation

By: _____
Name: Erik P. Dove
Its:    Vice President

ROSEDALE DODGE, INC.,
a Minnesota corporation
By: _____
Name: Erik P. Dove
Its:    Vice President

STILLWATER FORD, LINCOLN-
MERCURY, INC., a Minnesota
corporation

By: _____
Name: Erik P. Dove
Its:    Vice President

{00016905.DOC;2}

 

HUDSON AUTO SALES, INC.,
a Wisconsin corporation
By: _____
Name: Erik P. Dove
Its: Vice President

WBDH REALTY, LLP,
a Minnesota limited liability partnership
By: Walden Investment Company,
a Minnesota corporation,
Its General Partner
By: _____
Name: Erik P. Dove
Its: Vice President

EDEN PRAIRIE AUTO PROPERTIES,
LLP, a Minnesota limited liability
partnership
By: WBDH Realty, LLP,
a Minnesota limited liability
partnership,
Its General Partner
By: Walden Investment Company,
a Minnesota corporation,
Its General Partner
By: _____
Name: Erik P. Dove
Its: Vice President

ROSEDALE LEASING LLC,
a Minnesota limited liability company
By: _____
Name: Erik P. Dove
Its: Vice President

JACOB HOLDINGS OF ST. LOUIS
PARK LLC, a Minnesota limited liability
company
By: _____
Name: Erik P. Dove
Its: Vice President

{00016905.DOC:2}

JACOB HOLDINGS OF BURNSVILLE
LLC, a Minnesota limited liability
company

By:_____
Name: Erik P. Dove
Its:    Vice President


JACOB HOLDINGS OF STILLWATER
LLC, a Minnesota limited liability
company

By:_____
Name: Erik P. Dove
Its:    Vice President


JACOB HOLDINGS OF HUDSON LLC,
a Minnesota limited liability company

By:_____
Name: Erik P. Dove
Its:    Vice President


JACOB HOLDINGS OF ROSEVILLE
LLC, a Minnesota limited liability
company

By:_____
Name: Erik P. Dove
Its:    Vice President


JACOB HOLDINGS OF FOREST LAKE
LLC, a Minnesota limited liability
company

By:_____
Name: Erik P. Dove
Its:    Vice President


{00016905.DOC:2}